HARRY D. SPELLMAN *v.* JOHN H. WILSON, MAYOR OF THE CITY AND COUNTY OF HONOLULU.

No. 1608.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. R. J. O'BRIEN, JUDGE.

SUBMITTED JUNE 5, 1925.                    DECIDED AUGUST 20, 1925.

PETERS, C. J., PERRY AND LINDSAY, JJ.

THE MUNICIPAL ACT—*form and contents of bill or resolution involving the expenditure of public money.*

In the absence of any provision of law requiring that a bill or resolution involving the expenditure of public money should state the specific object or objects thereof, appropriations by the board of supervisors for "New grounds, grading and improvements" from funds made available by L. 1923, s. 176, and for "Erecting new school buildings, additions and improvements; acquiring new grounds and improving the same and purchasing new furniture" from funds made available by the provisions of L. 1923, c. 259, while general in their designation of the purposes thereof, are sufficient to authorize expenditures by the board of supervisors therefrom for the acquisition of land for school purposes.

Opinion of the Court.

SAME—*same.*

> Where resolutions providing for the expenditure of public money have after their introduction been published in a newspaper or newspapers pursuant to the provisions of R. L. 1925, s. 1733, expenditures by the board of supervisors pursuant to such resolutions need not be readvertised in accordance with the provisions of said section.

SAME—*duty of mayor to countersign orders of the board of supervisors for the payment of money.*

> R. L. 1925, s. 1823, in requiring the signature of the mayor to all demands allowed and orders made by the board of supervisors for the payment of money, duly certified by the clerk, is mandatory and imposes upon the mayor a ministerial duty involving no exercise of discretion or judgment on his part.

MANDAMUS TO MUNICIPAL OFFICERS—*ministerial duty of mayor.*

> The duty of the mayor of the City and County of Honolulu to countersign orders for the payment of money under the provisions of R. L. 1925, s. 1823, being a purely ministerial one mandamus is the proper remedy to enforce its performance.

SAME—*existence of other adequate remedy—assumpsit.*

> Although assumpsit might be available to a creditor of the city and county for the amount of his claim ordered paid by the board of supervisors, under the provisions of R. L. 1925, s. 2683, mandamus is appropriate to enforce the performance by the mayor of the ministerial duty devolving upon him under the provisions of R. L. 1925, s. 1823, to countersign an order of the board of supervisors to pay such claim.

OPINION OF THE COURT BY PETERS, C. J.

On September 4, 1924, the supervisors of the City and County of Honolulu at a regularly convened meeting thereof by resolution duly adopted accepted a deed to the city and county from the petitioner and his wife (the latter joining therein by way of release of dower) of certain land situate at Kapahulu within said city and county, in which the consideration named was $27,238, and at the same time by another resolution also duly adopted ordered that the petitioner be paid the sum of $27,238—$20,000 out of an appropriation theretofore made for "New grounds, grading and improvements" and

$7,238 out of an appropriation theretofore made for "erecting of buildings, additions and improvements, acquiring new grounds and improvements and purchasing new furniture." Upon presentation, however, to the mayor of the city and county of an order of the board for the payment to the petitioner of the sum of $27,238, certified by the deputy city and county clerk, for his signature he refused to countersign said order. Thereupon the petitioner instituted these proceedings to compel the mayor to countersign said order. A demurrer was filed by the respondent to the alternative writ and overruled. Upon hearing had the writ was made peremptory. The mayor appealed.

Such of appellant's assignments of error as we deem deserving of comment may be grouped under the following contentions made in his brief: (1) That the resolution directing the payment to the petitioner of the sum of $27,238 was not after its introduction published as required by the provisions of R. L. 1925, s. 1733; (2) that if in the opinion of the mayor the land subject to such deed was unsuited for school purposes the mayor in his discretion had the right to refuse to countersign an order of the board of supervisors for the payment of the purchase price thereof, and (3) that the petitioner has a plain, adequate and complete remedy at law.

By L. 1923, c. 176, entitled "An Act to Fix the School Budget for the Biennial Period Beginning January 1, 1924, and Ending December 31, 1925," there was appropriated for "New grounds, grading and improvements City and County of Honolulu" the sum of $40,000. By L. 1923, c. 259, the board of supervisors of the City and County of Honolulu was authorized "to withdraw from that portion of the appropriation made by it from any funds appropriated and available for the building, constructing, laying and maintaining of the Waikiki sewer

system not more than the sum of one hundred eighty-three thousand, three hundred fifty-eight dollars ($183,-358.00) and to reappropriate the same for the purpose of erecting new school buildings, additions and improvements, acquiring new grounds and improving the same." On January 15, 1924, by resolution No. 8, the board of supervisors of the City and County of Honolulu appropriated the sum of $319,247 "out of all moneys in the special fund of the school budget for the year 1924, as stipulated in Act 176, Session Laws of 1923" for certain purposes, including the following item: "New grounds, grading and improvements $20,000." The mayor approved this resolution on the same day. On July 2, 1924, pursuant to the authority conferred upon it by L. 1923, c. 259, the board by resolution No. 194 withdrew from that portion of the appropriation theretofore made by it from the permanent improvement fund for the building, constructing, laying and maintaining of the Waikiki sewer system the sum of $83,238 and appropriated that amount to an account to be known as "Erecting new school buildings, additions and improvements, acquiring new grounds and improving the same and purchasing new furniture." This resolution was approved by the mayor on July 9, 1924. The deed from the petitioner to the city and county, which was accepted by the board on September 14, 1924, was dated July 6, 1924.

R. L. 1925, s. 1733, provides that every bill or resolution providing for the expenditure of public money, except sums less than $500, shall after its introduction be published in a newspaper or newspapers with the ayes and noes for at least three successive days, Sundays and holidays excepted, before final action upon the same. Both resolutions 8 and 194 after introduction and before final action upon the same were published pursuant to the requirements of the statute. No point is made that

they were not.   The resolution of September 4, 1923, authorizing the payment to the petitioner of the consideration named in the deed was not published after its introduction and before final action.   The respondent claims that this should have been done.   The petitioner on the other hand denies that publication was necessary, claiming that the resolution was not an appropriation but an expenditure by the board of supervisors involving the appropriations previously made by resolutions 8 and 194.

We have been unable to find any statutory provision, and none has been called to our attention, prescribing the form or contents of a bill or resolution involving the expenditure of public money.   Nor are we advised of any provision of law requiring that a bill or resolution involving the expenditure of public money should state the specific object or objects of the appropriation.   In the absence of such requirements a general statement of the purpose of the appropriation is sufficient.   Both resolutions involved in the instant case are general in their designation.   In the absence of statute requiring a more specific designation of the object or objects of the appropriation it is sufficient.   The legislature in framing the Municipal Act evidently intended that the city and county, similarly as the Territory, might appropriate in general terms, leaving to the officer or board authorized by law to make expenditures the final determination of the specific object or objects for which the money appropriated should be spent.   R. L. 1925, s. 1738, sub-par. 17, commits to the board of supervisors of the city and county the power to purchase such property as may be needed for public use.   This implies a discretion unhampered by any advance legislation.   A lump-sum appropriation for the acquisition of school property upon its passage becomes immediately available for the

purchase of such pieces of property as the board of super-
visors may in its discretion determine and no further or
additional appropriation is necessary when the board
acts. No further or additional publication was required
to legalize the expenditure by the board of supervisors
of money for the purchase of specific property required
for school purposes. The use is a public one and the
right to purchase necessarily includes the right to pay
for the property purchased. Moreover, the mayor of
the city and county cannot by refusing to countersign
a duly certified order of the board of supervisors for the
payment of the purchase price of land acquired for public
.use substitute his discretion for the discretion of the
board. There is no provision contained in the Municipal
Act which confers upon the mayor the right to audit or
reject claims once passed by the board of supervisors.
The mayor is the presiding officer of the board of super-
visors. (R. L. 1925, s. 1726.) As such he has certain
executive powers and duties. (ss. 1786-1790.) In mat-
ters of legislation there is reserved to him the power of
veto. (ss. 1734, 1736.) But it is to the board of super-
visors that are committed the power and discretion of
purchasing property needed for public use. Where as
here an appropriation has been made for the acquisition
of property needed for school purposes and the board
of supervisors purchases property which in its discretion
is suitable therefor, orders for the payment of the pur-
chase price thereof, when authorized by the board of
supervisors, in the absence of fraud are binding upon
the mayor. The advisability or desirability of the pur-
chase when decided by the board is final. Over such de-
cision no other city and county officer, including the
mayor, has power of review. R. L. 1925, s. 1823, in re-
quiring the countersignature of the mayor to all demands
allowed and orders made by the board of supervisors

for the payment of money, duly certified by the clerk, confers upon the mayor a mere ministerial duty. The provision of that section requiring that immediately after adjournment of each meeting of the board of supervisors the city and county clerk shall certify all demands and orders made for the payment of money, which demands or orders shall be countersigned by the mayor, is mandatory and apparently designed for the authentication of orders for the payment of money passed by the board and not for review by the mayor. The acceptance of the deed and the order for the payment of the purchase price thereof completed the transaction. The legality of the prior appropriations is admitted. No question is raised by the respondent as to the ownership by the petitioner of the property subject to the deed at the time of its delivery. Nor does the respondent deny that sufficient money was available in each appropriation to meet the allocation against it. No question has been raised as to the good faith of the board in the purchase of the property. The demand was certified by the deputy city and county clerk. When presented to the mayor it became incumbent upon that officer to countersign it. His duty to countersign orders for the payment of money is a mere ministerial one and involves no exercise of discretion or judgment on his part. (*Bowles* v. *Perkinson,* 205 Pac. (Okl.) 770; *State* v. *Ames,* 18 N. W. (Minn.) 277.) The duty of the mayor to countersign orders for the payment of money being a purely ministerial one mandamus is a proper remedy to enforce its performance. (*State* v. *Daggett,* 68 Pac. (Wash.) 340, 343; *Bowles* v. *Perkinson, supra.*)

That assumpsit against the city and county might be available to the petitioner cannot deprive him of the relief afforded by the writ against this respondent. R. L. 1925, s. 2683, in defining the objects of the writ

of mandamus specifically provides that it shall issue even where a party has other means of relief if the slowness of the ordinary legal forms is likely to produce such a delay that the public good and the administration of justice will suffer from it and where justice and reason require that some mode should exist of redressing a wrong or an abuse of any nature whatever. There is no dispute as to the facts. The duty of the mayor is clear under the circumstances. It is ministerial. It could serve no useful purpose to relegate the petitioner to his legal remedy and subject him to the delays incident thereto. Justice delayed is justice denied. The remedy invoked is peculiarly adapted to redress a wrong resulting from the refusal of the mayor of a legal duty enjoined upon him by the Municipal Act. Anything short of a summary direction to that official to forthwith perform his public statutory duty would be a miscarriage of justice.

All of the errors assigned have been considered and found to be without merit.

The judgment appealed from is affirmed.

*Smith, Warren, Stanley & Vitousek* for petitioner.

*Lightfoot & Lightfoot* for respondent.