## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### CAMP AND ANOTHER v. BRUCE.

#### DECEMBER 7, 1898.

Absent, Riely and Cardwell, JJ.

1. CONTRACTS—*Illegality—Failure to Plead—Waiver—Objection in Appellate Court.*—Courts of equity, from reasons of public policy, will not enforce an illegal contract, though the illegality be not relied on in the pleadings, but disclosed for the first time by the evidence. Nor can such illegality be waived by even the most solemn agreement. The defence of illegality of the contract may be made for the first time in argument in the appellate court.

2. JUDICIAL SALES—*Resale at Advance Price before Confirmation—Void Contracts.*—A purchaser at a judicial sale cannot, before confirmation, sell his bargain to another at an advance price. Such a contract tends to prevent the property from bringing the best price, and is therefore contrary to public policy, and void.

3. JUDICIAL SALES—*Resale by Bidder at Advance—Confirmation—Commissioners of Sale—Duties of.*—A court of equity will not, where the facts are known to it, confirm a sale where the bidder has sold his bid at an advance, unless the advance inures to the benefit of the parties to the suit. If the commissioner who made the sale knows of a resale by the bidder at an advance price, it is his duty to report it to the court. He is the mere agent of the court, and should give to it all information in his possession that can affect the confirmation of the sale.

Appeal from a decree of the Circuit Court of Nansemond county, pronounced December 11, 1896, in a suit in chancery wherein the appellants were the complainants, and the appellee was the defendant.

*Affirmed.*

This was a suit in chancery instituted by the appellants, W. N. Camp and P. D. Camp, against the appellee, B. M.

Bruce, for the purpose of compelling the defendant, Bruce, to convey to the complainant a tract of 2,900 acres of land in Nansemond county. The complainants charge that Bruce had bought the land at a judicial sale, and before confirmation had sold and conveyed all of his right, title, and interest in the land to them at a price stated, which was about $500 in excess of the amount which Bruce had agreed to pay for the land, and had agreed that, upon confirmation, he and his wife would unite with the commissioner and make them a deed; " that notwithstanding the covenants and agreements as above set forth, and before the regular time in course for the sale made by the special commissioner as aforesaid to be confirmed by the court, and a deed directed to be made to your orators, in pursuance of the agreement aforesaid, the said B. M. Bruce, did contrive, by trickery, and scheming, and fraud, to defeat the same, by improperly and fraudulently employing and using one B. P. Sale, whose name the said B. M. Bruce did use and employ fraudulently and deceitfully to defeat the said contract, and did cause the said B. P. Sale to put in an upset bid for the land aforesaid, for his, the said B. M. Bruce's, advantage and benefit, before the confirmation of the sale by the court, by reason of which upset bid the said land was ordered by the court to be, and was, resold, at which resale B. M. Bruce became the purchaser, and the said Bruce now has the property in his possession, by reason of the said upset bid and subsequent sale made in pursuance thereof and of other upset bids and sales caused thereby, in all of which acts on the part of said B. P. Sale, the said Bruce was the moving spirit, aiding, abetting, and directing the said sale, and furnishing the funds necessary to do the said acts and defeat his said contract."

A copy of the agreement is filed as an exhibit with the bill.

The complainants aver their readiness and willingness to comply with their part of the contract, and pray that Bruce be compelled to convey the land to them. On June 11, 1894, Bruce became the purchaser at the price of $2,100. After

sundry upset bids and resales he finally became the purchaser on July 9, 1895, at the price of $4,850, which sale was confirmed. The proceedings in the suit of *Ranstead* v. *Ranstead*, under which the resales were made, are not copied into the record in this case. The other facts sufficiently appear in the opinion of the court.

*Jackson Guy* and *J. B. Prince*, for the appellants.

*R. H. Rawles*, *R. E. Boykin*, and *Neely*, *Seldner & Warrington*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The record shows that on the 11th day of June, 1894, at a judicial sale in the case of *Ranstead* v. *Ranstead*, &c., the appellee purchased a tract of land containing 2,900 acres at the price of $2,100; that he complied with the terms of sale by paying the cash required and executing his bonds for the deferred payments; that the sale was reported to the court, but pending confirmation he entered into a written agreement with the appellants by which, in consideration of their assuming payment of the purchase money bonds held by the commissioner, and the payment of $1,565, to the appellee (which was $500 profit on his bid) he sold and conveyed all his right, title, and interest in the land, and in the sale and purchase thereof to the appellants, and agreed that he and his wife would unite with the commissioner in his conveyance of the land which he was directed to ask the court to have made to the appellants. An upset bid having been put in, the sale to the appellee was set aside, and a resale ordered. After the land had been resold several times, upset bids having been put in from time to time, the appellee finally became the purchaser at the price of $4,850, at a sale which was confirmed.

Some months after the confirmation of that sale, the appellants filed this bill to compel the appellee to specifically exe-

cute his agreement with them, upon the ground that he, in violation of its provisions and in fraud of their rights, had improperly and fraudulently procured the upset bid to be put in which prevented the confirmation of the first sale made to him.

The appellee answered the bill, and, among other things, admitted the execution of the agreement, and alleged that he would have complied with its provisions if the sale had been confirmed, but denied that he procured the upset bid to be put in which prevented its confirmation.

The first question to be determined is whether that agreement is one which a court of equity will enforce. If it be an illegal contract, as claimed in argument, this suit cannot be maintained, although that defence was not raised by the pleadings, nor relied upon in the Circuit Court. The law refuses to enforce illegal contracts, as a rule, not out of regard for the party objecting, nor from any wish to protect his interests, but from reasons of public policy. Whenever, therefore, the illegality of the contract appears, whether alleged in the pleadings or made known for the first time in the evidence, it is fatal to the case. That defect cannot be gotten rid of either by failure to plead it, or by agreeing to waive it in the most solemn manner. The law will not enforce contracts founded in its violation. Fry on Spec. Per., sec. 309; 1 Story's Eq. 261; Pomeroy's Contracts, sec. 286 (2d Ed.); *Coppell* v. *Hall*, 7 Wall. 542.

We have no statute declaring that contracts like the one under consideration are unlawful, yet under the principles of the common law any contract that is made for the purpose of, or whose necessary effect or tendency is to lessen competition and restrain bidding at judicial sales, is held to be illegal because opposed to public policy. The object in all such sales is to get the best price that can be fairly had for the property. The policy of the law, therefore, is to secure such sale from every kind of improper influence. To allow one bidder to buy off another, which is but a species of bribery, and thus prevent the property from bringing the best price, is condemned by

the law, and the courts will not enforce contracts founded in such practices. *Underwood* v. *Mc Veigh*, 23 Gratt, 409, 428–9; *Cocks* v. *Izard*, 7 Wall. 559, 562; Fry on Spec. Per., sec. 308; Pomeroy's Contracts, sec. 283; Greenhood on Public Policy, pages 183 to 189.

Tested by these principles the agreement in question was clearly illegal.

If the parties had succeeded in having the sale confirmed by the court and the appellants substituted as purchasers, in lieu of the appellee, at his bid of $2,100, the agreement would have operated as a fraud upon the court and the parties whose lands were being sold for purposes of partition. It would have enabled the appellee to put $500 in his pocket for which he furnished no valuable consideration, would have taken from the co-owners that much of their inheritance and enabled the appellants to get the property by buying off the court's bidder instead of putting in an upset bid, and taking the chances of having to pay a higher price for it at a resale. Neither in this case nor in the case in which the land was sold could such an agreement be enforced. If the commissioner who made the sale in the case of *Ranstead* v. *Ranstead*, had reported to the court that since the sale made by him the appellee had sold his bid to the appellants at a profit of $500, to be paid when the sale was confirmed (as he ought to have done, for he wrote the agreement, and knew all the facts, and the court, whose agent he was, had the right to know all that he knew about the appellants' dealings with its bidder that could affect the confirmation of the sale), instead of merely reporting that the appellee desired the conveyance for the land to be made to the appellants, the court would not have confirmed the sale at the appellee's bid of $2,100, although no upset bid had been put in.

A court will never, where the facts are known to it, confirm a sale where the bidder has sold his bid at an advance, unless the advance paid or to be paid inures to the benefit of the

parties to the suit. It does not allow bidders to trade behind its back, and speculate in that way on property which it is selling. 2 Dan. Chy. Pl. & Pr. 1285 (2d Ed.); *Hodder* v. *Ruffin*, 1 Tamlyn, 341.

In order to prevent this, it became the practice of the English chancery courts, in the time of Lord Elden it is said, to require the bidder who desired the court to substitute another in his stead, to file an affidavit that there was "no underhand bargain between them." *Rigby* v. *McNamara*, 6 Vesey, 515; *Vale* v. *Davenport*, 6 Vesey, 615; *Holroyd* v. *Wyatt*, 9 Jurist, 1072; 2 Collyer, 327.

The rule of the English chancery courts upon this subject is thus stated in 2 Daniel's Chancery Pleading & Practice, 1285 (5th Ed.): "If after becoming the bidder for an estate, the purchaser is desirous of being discharged from his contract, and of substituting another person in his stead, the court will, on motion, make an order to that effect; he must, however, support the motion by an affidavit that there is no underbargain, for the new purchaser may give the other a sum of money to stand in his place, and so deceive the court; and the rule appears to be, that if a purchaser resell behind the back of the court before the purchase is confirmed, the second purchaser is considered as a substituted purchaser, and must pay the additional price into court for the benefit of the estate. When the highest bidder at an auction induced the auctioneer to accept another person in his place, concealing the fact that he had sold his bargain at an advance, which he received and absconded, the property was ordered to be resold, reserving all questions of liability of the original or sub-purchaser."

The English rule of requiring affidavits, where one purchaser is asked to be substituted for another, is a wise one, and the agreement sought to be enforced shows the necessity for some such safeguard in our practice. It might be well for our courts in all such cases, unless the parties consent to the substitution, to adopt the English practice. It is of the utmost

consequence that judicial sales, and especially sales for parti-
tion where infants are generally interested, should be pro-
tected from practices and influences which may prevent the
lands from bringing the best price.

The bill was properly dismissed by the Circuit Court, and
its decree must be affirmed.

*Affirmed.*