## Shaw v. Elijah et al.

[No. 8,030. Filed October 15, 1913.]

1. Contracts.—*Contract in Restraint of Competition.—Validity. —Public Sales.*—Any agreement for the purpose of lessening competition at a public sale of property, for the purpose of procuring the same below its value, is void, although agreements whereby several persons combine to purchase property for their joint benefit, or to protect their existing interests, and authorizing one to bid for all, may be valid.    p. 237.

2. Contracts.—*Contract in Restraint of Competition.—Validity. —Private Sales.*—Contracts which have for their object the prevention of competition between persons desirous of purchasing certain property from a private owner are valid.    p. 238.

3. Contracts.—*Policy of Law.—Contract in Restraint of Competition.—Judicial Sales.*—It is the policy of the law to preserve competition at private judicial sales, as well as at public sales, so that a contract whereby a bidder at a private judicial sale induced another bidder to refrain from bidding, and was enabled to purchase the property at less than he otherwise would have been compelled to pay, is void and unenforceable, notwithstanding the price paid for such property was more than the appraised value thereof.    p. 238.

From Newton Circuit Court; *Charles W. Hanley,* Judge.

Action by William Shaw against James Elijah and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Frank Foltz,* for appellant.
*William Darroch,* for appellees.

Ibach, J.—Action by appellant against appellees Elijah, Long, Long and Sigler. The complaint was in four paragraphs, three of which declared on a check executed by appellee Elijah to appellant, and the fourth of which set

out the facts more fully, and declared on an agreement to pay made at the time the check was executed. There were two paragraphs of answer and two of reply. Appellees recovered below. Error is assigned in overruling appellant's motion for new trial, on the grounds that the court's decision is not sustained by sufficient evidence and is contrary to law, and in sustaining the appellees' demurrers to the fourth paragraph of complaint and the second paragraph of reply.

The parties agreed as to the facts constituting all the evidence in the cause and that these agreed facts might be used on appeal by either party as the evidence in the cause. The case is therefore before us entirely upon written evidence. We shall discuss the case with reference to these facts, and what we shall say concerning the state of facts will fully dispose of all questions concerning the pleadings, since in this case, the determination of the one necessarily disposes of the others.

The agreed statement of facts, abbreviated in some of its nonessentials, follows: in a certain partition suit in the Newton Circuit Court the court found that partition of the lands involved could not be made without injury, and ordered the land sold at private sale for not less than its appraised value, after giving three weeks' notice by publication and posting. Condra Stucker was appointed commissioner to sell said lands, gave bond and entered upon the discharge of his duties as such, and gave the required notice of the sale, which was to take place at his place of business at the town of Mt. Ayr on November 13, 1909, when he would offer said real estate to the highest and best bidder for cash. On that day defendant Elijah attended said sale and bid the sum of $4,100, which was the appraised value of said land; plaintiff, on behalf of himself and defendants Long and Long, bid on said land, also, making a higher bid than defendant Elijah, and so plaintiff and Elijah bid back and forth, placing certain bids on said real estate until they bid

the same up to $4,400, which was a fair cash value thereof and in excess of the appraised value. On December 31, 1909, the commissioner Stucker informed defendant Elijah that he and this plaintiff should get together and adjust their differences in regard to bidding further on said real estate, and in pursuance with said request defendant Elijah called on plaintiff and offered and agreed to pay him the sum of $175 in consideration that plaintiff would not bid further against Elijah on said real estate, the said $175 to be paid when it transpired that Elijah was the successful bidder and he had approved the title and the sale to him had been confirmed and the land conveyed to him, or he, Elijah, would accept from plaintiff a sum of $175, and would step out and make no further bid on said real estate. On said December 31, 1909, plaintiff accepted the proposition of defendant Elijah, and a check for $175 bearing date of December 31, 1909, was made payable to plaintiff and signed by Elijah, which is the check mentioned and set out by plaintiff in paragraphs Nos. 1, 2, and 4 of his amended complaint, bearing the above date. Plaintiff and Elijah going together, said check was taken to the bank of defendant Joseph R. Sigler, a banker in the town of Mt. Ayr, and was delivered to Sigler upon the one consideration that plaintiff would not bid further against Elijah at said commissioner's sale of said land, and that said check would be paid when the land was sold to defendant Elijah, the title approved by him and sale and conveyance confirmed, and title in him. At the time said real estate was first offered for sale by Stucker and continuously thereafter until it was sold to Elijah, the said Elijah had no interest in said land, and no claim or charge against the same or any of the owners thereof, equitable or otherwise, neither did the plaintiff have any such claim or interest, but he as well as Elijah was merely a *bona fide* bidder at the sale. The above mentioned check remained in the possession of Sigler, undelivered by him to any person until January 15, 1910, when Elijah called at

said bank, and without any other or different agreement or understanding with the plaintiff and without any consideration therefor and without the knowledge or consent of plaintiff, took up said check, bearing date of December 31, 1909, and destroyed the same and made another check bearing that date, payable to· plaintiff, calling for the sum of $175 executed by himself, which check was left ·with Sigler with instructions to him by said Elijah not to deliver it to plaintiff until ordered to do so by Elijah, which last mentioned check is the identical check mentioned in the second and third paragraphs of plaintiff's complaint as bearing date of January 15, 1910. After the said check of December 31, 1909 was made, plaintiff made no further bid on said above-described real estate being offered by commissioner Stucker. Defendant Elijah bid thereon the sum of $4,450, and his bid so made was accepted, the title by him approved and the sale to him was confirmed, and the land conveyed to him thereunder at the March term, 1910, of the Newton Circuit Court. Said commissioner had caused said land to be appraised before offering the same for sale, and the appraised value as reported by him was $4,100. Before the commencement of this action plaintiff made frequent demands on Elijah to pay said check and the sum of $175, which at all times Elijah refused to do and still refuses to do, and before commencing this action plaintiff made frequent demands upon defendant Sigler to surrender either one or both of said checks to him and demanded the payment thereof of him and of the said Mt. Ayr bank, which defendant Sigler refused at all times. No part of the checks or of said sum of $175 has been paid.

The one important question in this appeal is whether the agreement by Elijah to pay Shaw $175 if he would refrain from further bids at the commissioner's sale, in furtherance of which agreement the checks were made, was valid
1. and legally enforceable. The general rule is that any agreement which has for its object the lessening of

competition at a public sale of property, for the pur-
2.  pose of procuring the same at a price below its value
is void.   However, agreements which have a legiti-
mate object, as where several persons combine to purchase
property for their joint benefit, or to protect their existing
interests, and authorize one to bid for all, may be valid,
though the incidental effect is to diminish competition.   And
contracts which have for their object the prevention of pri-
vate competition in the purchase of property are valid.
Greenhood, Public Policy 183-196, and cases cited; 2 Elliott,
Contracts §§759-761; *National Bank* v. *Sprague* (1869), 20
N. J. Eq. 159; *Morrison* v. *Darling* (1874), 47 Vt. 67.   In
the present case, it seems that the agreement was entered
into in good faith, and even that the commissioner had
something to do in bringing it about, while apparently no
one has raised any question as to the validity of the sale.
However, neither Shaw nor Elijah had any interest in the
property to protect, nor did they combine to purchase the
property jointly for their mutual benefit, or to partition
between them.   If the facts were exactly similar to those
of the present case, except that the sale was public, without
doubt an agreement similar to that under consideration
would be void.   On the other hand, if Shaw and Elijah had
both been desirous of purchasing certain lands from a pri-
vate owner, and had each made him offers as to the price,
and Elijah had agreed to pay Shaw a certain sum if he
would make no further offers, unquestionably, under the
preceding authorities, their agreement would have been
valid.

But this was not strictly a public sale, neither were the
bidders in the position of prospective purchasers who were
making offers to a private person, who might or might
3.  not accept as he saw fit.   This was a private judicial
sale, held by a commissioner of the court, who was
bound to sell the property to the highest and best bidder.
If it is the policy of the law to preserve competition at pub-

lic auction sales, then it must likewise be its policy to pre-
serve competition at private judicial sales, in order to safe-
guard the interests of the owners of the property to be sold,
and to secure at such sales the best obtainable price for such
property. Even though a greater price than the appraised
value of the property was realized in the present instance,
yet the owners of the property were entitled to the highest
price which it would bring under free competition. The
object of the agreement between Shaw and Elijah was
clearly to prevent competition. However, the matter is not
entirely one of first impression in the courts of this State,
and we think the case of *Goldman* v. *Oppenheim* (1888),
118 Ind. 95, 20 N. E. 635, is decisive. In that case the de-
fendants had given a check for $300 to the plaintiff, in con-
sideration that he should withdraw a bid of $4,000 on a
stock of goods sold by an administrator at private sale, thus
enabling defendants to obtain the goods for their bid of
$3,400. The action was brought upon the check. The court
said, ''The administrator was about to sell the goods in pur-
suance of the order of the court. It would be his duty to
sell them to the highest responsible bidder, for not less than
the appraised value, and he would be liable as such admin-
istrator if he failed to do so and loss resulted by reason
thereof. Just before the sale was to take place, the appellee
and Thurmauer, to whom he delivered the check, entered
into an agreement by which appellee gave his check to Thur-
mauer for $300, in consideration for which Thurmauer
agreed to, and did, withdraw a bid of $4,000 which he had
made for the firm of which he was a member for the goods.
This agreement was made for no other purpose, and could
have no other effect, than to prevent competition in bidding
on the property offered for sale, and to enable appellee to
purchase the goods for a less sum than he otherwise could,
to the detriment of the estate of the deceased. Such a con-
tract is unlawful, and can not be enforced.''

It was said in the case of *Camp* v. *Bruce* (1898), 96 Va.

521, 31 S. E. 901, 43 L. R. A. 146, 70 Am. St. 873, "Under the principles of the common law any contract that is made for the purpose of, or whose necessary effect or tendency is to lessen competition and restrain bidding at judicial sales, is held to be illegal because opposed to public policy. The object in all such sales is to get the best price that can be fairly had for the property. The policy of the law, therefore, is to secure such sale from every kind of improper influence. To allow one bidder to buy off another, which is but a species of bribery, and thus prevent the property from bringing the best price, is condemned by the law, and the courts will not enforce contracts founded in such practices."

It follows that we must hold that the agreement between Shaw and Elijah was one which can not be enforced at law. The trial court committed no error. Judgment affirmed.

NOTE.—Reported in 102 N. E. 885. See, also, under (1) 8 Cyc. 470; (3) 24 Cyc. 28. As to agreements to stifle competition at public sale, see 2 Am. Dec. 138; 131 Am. St. 486. As to suppression of competition at judicial sale, see 42 L. R. A. (N. S.) 1198.