# Richmond

## PHILIP LEVY AND OTHERS V. DAVIS.

### January 15, 1914.

1. CONTRACTS—*Enforcement—Illegal Consideration—Parties in Pari Delicto.*—Courts will not aid a party to enforce an agreement made in furtherance of objects forbidden by statute, the common law, or the general policy of the law, or to recover damages for its breach, or to recover back money paid under it when the agreement has been executed in whole or in part. If the parties are in *pari delicto* and one of them has performed the illegal agreement in whole or in part, he cannot recover from the other party that which he has parted with under the contract. The law simply leaves the litigants in the plight in which they have seen fit to place themselves without undertaking to balance benefits or burdens. If either derives a benefit from the transaction, it results from the act of the parties and not of the law. In its essence the doctrine is not founded upon the interest or supposed contractual rights of the parties. All such considerations are subordinated to the common weal, and in the eye of the law the contract confers no rights upon the parties. If property of the plaintiff is in the possession of the defendant and he is forced to rely upon the illegal contract in order to recover it, the law will extend him no aid.

2. CONTRACTS—*Illegal Consideration—When Admissible as a Defense.*—Although a plaintiff can make out his case without disclosing the illegal character of the contract in suit, the defendant will be permitted to set up such illegality as a defense whenever the court can see that to permit him to do so will defeat the object of the illegal transaction and promote the interest of society and the policy of the law. This is permitted for the public good and not out of any consideration for the defendant.

3. CONTRACTS—*Illegal Consideration—Mutuality of Interest.*—When the evidence shows mutuality of interest on the part of buyer and seller with respect to the illegal use to be made of the property, there can be no recovery by the seller of either the property itself or the purchase price thereof.

4. APPEAL AND ERROR—*Instructions—Invited Error—Estoppel.*—A party

who invites error will not be heard to complain of having misled the court. This principle is not affected by the fact that the party had asked for other instructions propounding a different doctrine which were refused and the ruling excepted to. He should have stood by his exception.

5. STATUTES—*Construction—New Remedy—Cumulative Remedy.*—A statute prescribing a new remedy for an existing right should never be construed to abolish a pre-existing remedy, in the absence of express words or necessary implications.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of detinue. Judgment for the defendant. Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*N. T. Green* and *Moe Levy,* for the plaintiffs in error.

*O. L. Shackelford* and *Williams, Tunstall & Thom,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is an action of detinue to recover the possession of certain furniture and other household goods sold and delivered by the plaintiffs in error to the defendant in error, or if a recovery in specie should prove impracticable, to recover, in the alternative, the fair value of the property, together, in either case, with damages for the detention.

The written contract of sale contains stipulations that "the said parties of the first part do not part with, nor does said party of the second part acquire, any title to said articles until they are fully paid for;" and "the said party of the second part agrees not to remove the said articles from the said premises or sell, or attempt to sell, or otherwise dispose of the said articles without the consent of the said parties of the first part."

The case was tried on a plea of the general issue, and resulted in a verdict and judgment for the defendant. There is no conflict in the evidence. The goods were bought by the defendant, who kept a house of prostitution in the city of Norfolk, on the suggestion and at the solicitation of Harry Levy, one of the partners, for the specific purpose of being used in her business, and with knowledge on his part of the character of the business and that her only means of payment was the income to be derived therefrom. It furthermore appears that the partner referred to instigated the defendant to enlarge her business and profits by keeping a house full of girls, especially to meet the demands of sailors of the battleship fleet, which was expected at Norfolk on its return from abroad.

The prevailing doctrine with respect to transactions of this class is well stated in 2 Elliott on Contracts, sec. 1064: "As a general rule the law will leave all equally guilty of an illegal or immoral transaction where it finds them, and will neither lend its aid to enforce the contract while executory, nor to rescind it and recover the consideration parted with when executed. 'It is a well settled principle of law that the courts will not aid a party to enforce an agreement made in furtherance of objects forbidden by the statute, or by common law, or general policy of law, or to recover damages for its breach, or when the agreement has been executed in whole or in part by payment of money to recover it back.' "

Again, in section 1094, it is said: "It is also true as a general rule that if the parties are *in pari delicto* and equally at fault and one of them has performed the illegal agreement in whole or in part, he cannot recover from the other party that which he has parted with under the contract. The law will leave the parties where it finds them. The rule is the same in equity."

In this instance we are dealing with a contract in aid

of a business which the statute denounces as a crime punishable by fine and imprisonment. Va. Code, sec. 3790. And from an ethical standpoint there is no difference in degree of turpitude between the parties, as each knowingly was to participate in the fruits of the crime.

We do not understand the general statement of the law, as laid down by, Elliott, to be controverted—at all events it is sustained by the overwhelming weight of authority both English and American. The effort here is made, however, to bring the case within the influence of alleged qualifications of the rule: (1) That such defense will not be suffered to invest a party with greater property rights in the subject-matter than are conferred by the illegal contract; and (2) that if the plaintiffs can make out their case without disclosing the illegal character of the contract, the defendant will not be permitted to set up such illegality as a defense, and there may still be a recovery.

1. The result of the application of the first proposition would practically be to abrogate the rule which avoids such contracts. In its essence the doctrine is not founded upon the interests or supposed contractual rights of the parties. All such considerations are subordinated to the common weal, and in the eye of the law the contract confers no rights upon the parties. If either derives advantage from the transaction, it results from the act of the parties and not of the law. The law simply leaves the litigants in the plight in which they have seen fit to place themselves without undertaking to balance benefits or burdens.

In denying a recovery in the instant case, it was not necessary for the court to consider the quantity of interest in the goods intended to be conferred by the contract upon the buyer. It was sufficient for the court to know that possession of the property had been delivered by the plaintiffs to the defendant, and that in order to recover it the sellers were forced to rely upon a contract condemned by the law as opposed to the moral welfare of society.

2. The second contention, that plaintiffs were entitled to recover because they could make out their case without disclosing the illegal character of their contract, in the circumstances of the particular case, is not sustained by the decisions of this court.

In *Cardwell* v. *Kelly*, 95 Va. 570, 28 S. E. 953, 40 L. R. A. 240, Riely, J., had occasion to consider the defense of illegal consideration, and the maxims *"nemo allegans"* and *"in pari delicto."* In that case, in an action by the receiver of an insolvent corporation against a stockholder to recover a stock subscription for the benefit of creditors whose debts were contracted on the faith of his and other subscriptions, it was held the stockholder could not defend on the ground that he was induced to subscribe by the chance of obtaining one or more lots in a drawing for distribution of lots of unequal value. *Held,* the subscriber was estopped from setting up a defense involving his own unlawful conduct as against creditors whom he had contributed to mislead. But the learned judge remarks: "It is a general rule, as stated by an able writer, that a contract or an agreement cannot be made subject of an action if it can be impeached on the ground of dishonesty, or as being opposed to public policy—if it be either *contra bonos mores,* or forbidden by the law. Broom Leg. Max. 706. A defendant against whom it is sought to enforce such a contract may show its illegality, and a court of justice will decline to lend its aid to enforce a contract thus wrongfully entered into. When, however, the parties are *in pari delicto,* but the plaintiff can make out his case without disclosing the unlawful nature of the contract, it is not a universal rule that the defendant will be allowed to show its illegality for the purpose of defeating the action." Continuing the discussion, Judge Riely deduces the following governing principle from the authorities with respect to such contracts: "They are injurious to the com-.

munity and violative of the policy. of the law; and so the courts, having in view the good of the public, and the policy of the law, will not lend their aid to enforce such a contract unless they can see that to do so will defeat the object of the illegal transaction, and promote the interests of society and the policy of the law. But when, in the particular case, it appears that this will be the result of such contract, the maxim, *'nemo allegans turpitudinem suam audiendus'* is rigorously applied, and the defendant will not be allowed to plead and prove his own wrong."

The doctrine announced in this case is in harmony with the previous decisions of this court on the subject.

In *Camp* v. *Bruce,* 96 Va. 521, 524, 31 S. E. 901, 43 L. R. A. 146, 70 Am. St. Rep. 873, it is said: "The law refuses to enforce illegal contracts, as a rule, not out of regard for the party objecting, nor for any wish to protect his interests, but from reasons of public policy. Whenever, therefore, the illegality of the contract appears, whether alleged in the pleadings or made known for the first time in the evidence, it is fatal to the case. That defect cannot be gotten rid of either by failure to plead it, or by agreement to waive it in the most solemn manner. The law will not enforce contracts founded in its violation." *Roller* v. *Murray,* 112 Va. 780, 72 S. E. 665, 38 L. R. A. (N. S.) 1202; *Southern Ry. Co.* v. *Rice's Admr.,* 78 S. E. 592.

There is also another view of this case equally fatal to plaintiff's pretensions. The trial court at their instance instructed the jury as follows: "The court instructs the jury as matter of law that the mere fact that the plaintiffs knew or had knowledge at the time of the contract of sale between the plaintiffs and defendant that the property embraced in said contract of sale was to be used by the defendant for an illegal or immoral purpose, or purposes, constitutes no defense to the plaintiffs' cause of action herein asserted. In order to prevent a recovery by plain-

tiffs herein it must further appear from the evidence, and the defendant has the burden of showing by the evidence, that in addition to such knowledge on the part of the plaintiffs, it was a part of the contract of sale between the plaintiffs and the defendant that the property contracted to be sold should be so used."

We entertain no doubt of the soundness of the proposition that when the evidence shows mutuality of interest on the part of the seller and buyer with respect to the illegal use to be made of the property, there can be no recovery. Yet, even if the instruction were erroneous, the plaintiffs would be estopped to question it. A party who invites error will not be heard to complain of having misled the court. Burks' Pl. & Pr. 511; *Kimball & Fink* v. *Friend,* 95 Va. 125, 27 S. E. 901; *Richmond Traction Co.* v. *Hildebrand,* 99 Va. 48, 52, 34 S. E. 888; *Norfolk & Western Ry. Co.* v. *Mann,* 99 Va. 180, 37 S. E. 849; *Richmond Traction Co.* v. *Clarke,* 101 Va. 382, 392, 43 S. E. 618; *Bugg* v. *Seay,* 107 Va. 648, 652, 60 S. E. 89, 122 Am. St. Rep. 877. Nor is this principle affected by the circumstance that the plaintiffs had asked for other instructions propounding a different doctrine which was refused and the ruling excepted to. They should have stood by their exception.

Applying the evidence to the law as laid down in plaintiffs' instruction, there is no escape from the conclusion that the plaintiffs, or one of them, instigated the defendant to buy the property for the avowed purpose of using it in a house of prostitution, and advised the defendant to enlarge the profits of the business by increasing the number of wretched victims of their avarice and doom them to a life of infamy.

Counsel for the defendant have drawn our attention to the remedy provided by section 2462, subdivision 2, of the Code, as furnishing an exclusive remedy in all cases where property has been sold and title reserved in the

seller. The remedy given by statute is extremely valuable (*Liquid Carbonic Co.* v. *Whitehead, ante.* p. 80, S. E. 104), but there is nothing in the enactment, express or implied, to indicate a purpose on the part of the legislature to abolish pre-existing remedies in that class of cases; and the rule on the subject has long been well settled, that "When a statute gives a new remedy, and contains no negative, express or implied, of the old remedy, the new one provided by it is cumulative, and the party may elect between the two." 2 Words & Phrases 1785; *Booker's Ex'or.* v. *McRoberts,* 1 Call. (5 Va.) 243; *Durrett* v. *Davis,* 24 Gratt. (65 Va.) 302; *Filler* v. *Tyler,* 91 Va. 458, 22 S. E. 235; *Kelly* v. *Lehigh, &c., Co.,* 98 Va. 405, 36 S. E. 511, 81 Am. St. Rep. 736; Barton's Chy. Pr. (2nd ed.) sec. 16; Sedgwick, Construction of Stat. and Const. Law, 75, 342; Sutherlin on Stat. Constr., sec. 399.

A statute prescribing a new remedy for an existing right should never be construed to abolish a pre-existing remedy in the absence of express words or necessary implication.

The discussion of geverning principles in the case sufficiently disposes of the subordinate questions involved which have not been specially noticed.

The judgment of the law and chancery court is plainly right and is affirmed.

*Affirmed.*