# Wytheville

## OSCAR D. ELLIS, AND OTHERS V. THE PEOPLES NATIONAL BANK OF MANASSAS, ET AL.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

. The opinion states the case.

*Raymond M. Hudson, Minor Hudson* and *Thomas H. Lion,* for the plaintiffs in error.

*T. E. Didlake* and *Robert A. Hutchison,* for the defendants in error.

HUDGINS, J., delivered the opinion of the court.

The first count in the declaration filed in this case alleges that Mackall M. Ellis was the assistant cashier and

teller of the Peoples National Bank of Manassas, and that the United States Fidelity and Guaranty Company was surety on his bond; that on December 15, 1933, the representatives of the bank and the bonding company informed Oscar D. Ellis, John P. Ellis, Raymond L. Ellis, and John W. Ellis, partners, trading as Ellis Bros., that Mackall M. Ellis, nephew to some of the partners and brother to others, had embezzled funds of the bank, and that unless the partners permitted the bank to apply $2,100, which they had on deposit, as part payment of the sum embezzled, they would cause Mackall M. Ellis to be arrested and sent to prison for a long term of years. Whereupon plaintiffs paid the sum of $2,100, "which said payment is illegal and without any consideration and the said plaintiffs (the partners trading as Ellis Bros.) are entitled to recover from said defendants (The Peoples National Bank of Manassas, and the United States Fidelity and Guaranty Co.) the said $2,100 with interest from December 15, 1933."

The other count alleges that the consideration for the payment was a promise by defendants to prevent any information of the embezzlement becoming known, or the prosecution of Mackall M. Ellis, and that the "defendants in violation of their promise, made known the said alleged defalcation and had the said Mackall M. Ellis arrested and sent to prison for a long term of years, on account of his said alleged shortage with the said defendant bank and the plaintiffs are entitled to recover from the said defendants the sum of $2,100, with interest from December 15, 1933."

To the judgment of the trial court sustaining a demurrer to the declaration, this writ of error was awarded.

It is not clear from the declaration on what theory plaintiffs base the action. It is uncertain whether they seek to recover money paid on an illegal contract, or damages for the breach of such contract. In either event there can be no recovery on the facts alleged.

Numerous cases are cited dealing with contracts executed under duress in which recovery was allowed. These

authorities are not applicable to the facts alleged in this declaration. In *Ford* v. *Engleman,* 118 Va. 89, 95, 86 S. E. 852, 855, Judge Keith quoted with approval Elliott on Contracts, section 140, thus: "There are three well defined periods of development in the law relative to duress. By ancient authorities it was held that duress could only exist where there was such a threat of danger to the object of it as was deemed sufficient to deprive a constant, or courageous man of his free will. The resisting power which every person was bound to exercise for his own protection was measured, not by the standard of the individual affected, but by the standard of the man of courage. At a subsequent period it was stated by text-writers and courts of last resort that duress, sufficient to render the contract voidable must be of a nature to overcome the will of a person of ordinary firmness or courage. This statement of the rule is still found in many recent authorities. Within recent years, however, the rule has been further modified and rendered more flexible. Courts now hold and textbooks affirm that the test is not whether the threat was sufficient to overcome the will of a man of courage, or of ordinary courage, but whether it actually overcame the will of the person threatened."

In the same case he also quotes from *Silliman* v. *United States,* 101 U. S. 465, 25 L. Ed. 987: "Duress by threats does not exist wherever a party has entered into a contract under the influence of a threat, but only where such a threat excites a fear of some grievous wrong; as of death, or great bodily injury, or unlawful imprisonment. * * * But where the threat, whether of mischief to the person or the property, or to the good name, was of sufficient importance to destroy the threatened party's freedom, the law would not enforce any contract which he might be induced by such means to make."

 Duress is a species of fraud, it is immaterial whether we apply the ancient doctrine that the threat of danger must be sufficient to deprive a *constant* and *courageous* man of his free will, or the modified doctrine, that

the threat must be of a nature to overcome the will of a man of ordinary *firmness* or *courage,* or the more recent doctrine, that the threat must be such that it actually overcame the will of the person threatened. The first count in the declaration fails to meet any of the three standards prescribed. It contains no allegation that plaintiffs were put in such fear as to overcome their will in making the payment. The allegation is that defendant threatened to prosecute, not one of plaintiff's but another business man, who was their kinsman. The general rule is that a contract cannot be avoided because an arrest or prosecution was threatened a third party. In other words the law does not regard the person under duress who enters into a contract to relieve another person and not himself. See 13 C. J. 404.

There is an exception to this rule when the subject of the duress is wife, husband, parent, child, or other very near relative. The American Law Institute, in its Restatement of the Law of Contracts, vol. 2, chapter 16, adopts the more liberal attitude in this class of cases. In section 492 of the 16th chapter, it is stated: "The threat need not be such as would put a brave man, or even a man of ordinary firmness, in fear. The question is rather, did it put one entering into the transaction in such fear as to preclude the exercise by him of free will and judgment? Age, sex, capacity, relation of the parties, attendant circumstances, must all be considered. Persons of weak or cowardly nature are the very ones that need protection. The courageous can usually protect themselves; timid persons are generally the ones influenced by threats, and the unscrupulous are not allowed to impose upon them because they are so unfortunately constituted."

Eliminating technical language from the first count, it alleges simply that officers for the bank and the bonding company informed four business men that their kinsman was short in his account, and unless the shortage was made good he would be prosecuted. They thereupon paid $2,100 on the amount due by the defaulter. "And where

*per minas* is relied on, the plea must state the nature of the threats, as well as the nature of the fear of the execution." 7 Encyc. Pl. and Pr. [1897 Ed.], p. 248. See *Keckley* v. *Union Bank of Winchester,* 79 Va. 458; *Rock* v. *Mathews,* 35 W. Va. 531, 14 S. E. 137, 14 L. R. A. 508; *Ford* v. *Engleman, supra; Cobb* v. *Vaughan & Co.,* 141 Va. 100, 126 S. E. 77, 43 A. L. R. 177; *Gloth* v. *Gloth,* 154 Va. 511, 552, 153 S. E. 879, 71 A. L. R. 700.

▪ The word "compelled" in the first count of the declaration, suggests duress of that rare class of cases in which the person compelled, or coerced, is a mere mechanical instrument in performing the act apparently indicating assent. An illustration of this class is where A, under the hypnotic influence of B, signs his name to a note, or other contract, and is ignorant of the fact that he signed anything. The other allegations in the count entirely negative this type of duress. There is the allegation of the threat made to four business men to prosecute their kinsman, but there is no allegation as to fear in any form except that indicated or suggested by the word "compelled." Good pleading requires that both the nature of the threat, and the nature of the fear be alleged. If it were not apparent from the other count in the declaration that there is no merit in plaintiff's case, the court would be inclined to permit this defect, if it is a defect, to be remedied by a proper amendment.

▪ Plaintiffs in the second count boldly allege that the consideration for the payment of the $2,100 was the promise to stifle criminal prosecution of a person guilty of a felony, and seemingly base the action, in this count, on the breach of this promise. Under the circumstances the law will lend its aid to neither party.

In *Camp* v. *Bruce,* 96 Va. 521, 524, 31 S. E. 901, 43 L. R. A. 146, 70 Am. St. Rep. 873, it is said: "Whenever, therefore, the illegality of the contract appears, whether alleged in the pleadings or made known for the first time in the evidence, it is fatal to the case. That defect cannot be gotten rid of either by failure to plead it, or by agreeing

to waive it in the most solemn manner. The law will not enforce contracts founded in its violation."

In *Levy* v. *Davis*, 115 Va. 814, 80 S. E. 791, plaintiff sued on a furniture contract, the taint of illegality not appearing on the face of the declaration. Defendant alleged and proved that plaintiff sold her the furniture for the specific purpose of enlarging her business as the keeper of a house of prostitution. The court denied plaintiff relief on the universal rule, as stated in 2 Elliott on Contracts, section 1064, quoted by the court, 115 Va. 814, at page 816, 80 S. E. 791, 792: "As a general rule the law will leave all equally guilty of an illegal or immoral transaction where it finds them, and will neither lend its aid to enforce the contract while executory, nor to rescind it and recover the consideration parted with when executed. 'It is a well settled principle of law that the courts will not aid a party to enforce an agreement made in furtherance of objects forbidden by the statute, or by common law, or general policy of law, or to recover damages for its breach, or when the agreement has been executed in whole or in part by payment of money to recover it back.'" *Rock* v. *Mathews, supra; Burke* v. *Shaver*, 92 Va. 345, 23 S. E. 749; *Roller* v. *Murray*, 107 Va. 527, 59 S. E. 421; Id., 112 Va. 780, 72 S. E. 665, 38 L. R. A. (N. S.) 1202, Ann. Cas. 1913B, 1088; *Norfolk and Western Railway Co.* v. *Dehart Distilling Co.*, 127 Va. 415, 103 S. E. 594; *Standard Island Creek Coal Co.* v. *Shamrock Coal Co.*, 86 W. Va. 675, 104 S. E. 106, 108; *Shonk Land Co.* v. *Joachim*, 96 W. Va. 708, 123 S. E. 444, 448; *Raleigh County Bank* v. *Bank of Wyoming*, 100 W. Va. 342, 130 S. E. 476; *Bristol* v. *Dominion National Bank*, 153 Va. 71, 149 S. E. 632; *American-La France & Foamite Industries* v. *Arlington County*, 164 Va. 1, 178 S. E. 783.

Some authorities make a distinction between cases in which the prosecution has not been instituted and where the prosecution is pending; that is, where the prosecution is threatened, it may be bought off if directed against an innocent party, but there is no innocent party here. The

defaulter was convicted. Judge Cardozo, speaking for the New York court, rejected this distinction in *Union Exchange Nat. Bank* v. *Joseph*, 231 N. Y. 250, 131 N. E. 905, 17 A. L. R. 323: "There is to be no traffic in the privilege of invoking the public justice of the State. One may press a charge or withhold it, as one will. One may not make action or inaction dependent on a price. * * * The State has, indeed, no interest to be promoted by the prosecution of the innocent. * * * That consideration, if it were controlling, is as applicable to agreements to discontinue as to agreements to abstain. The State has an interest, however, in preserving to complainants the freedom of choice, the incentives to sincerity, which are the safeguards and the assurance of the prosecution of the guilty. * * * Innocence will strangely multiply when the accuser is the paid defender. In such matters, the law looks beyond the specific instance, where the evil may be small or nothing. It throttles a corrupting tendency."

Plaintiffs contend that, because Code, section 4513, imposes a penalty to receive a consideration to compound a felony, but imposes no penalty upon the person paying the consideration, that the parties are not in *pari delicto*, and therefore plaintiff should be permitted to recover. *Clay* v. *Butler*, 132 Va. 464, 112 S. E. 697.

Such contracts are illegal regardless of statute, as they tend to suppress evidence and impede the due course of public justice. Justice Cardozo has so clearly and tersely given the reasons therefor in *Union Exchange Nat. Bank* v. *Joseph, supra,* that on this point we are content to adopt the views of that court as our own: "We find no equality sufficient to set the law in motion at the suit of knowing wrongdoers to undo a known wrong. * * * They had chosen to put private welfare above duty to the State. The State would not concern itself with the readjustment of their burdens unless for some better reason than the fact that indifference to duty had followed hard upon temptation. Excuse would seldom fail if temptation could supply it. * * * Here the suppliant for relief is himself the

author of the wrong. * * * we do not exclude the possibility that variant degrees of mitigation may permit variant conclusions. A different question would be here, for illustration, if the charge of crime had been put forward in bad faith, without reasonable foundation or genuine belief. Innocence maintaining its good repute against mere malice and oppression might move us to view with charity its methods of defense. * * * A charge without foundation in belief is a charge in name only—a snare and a decoy. Nothing in the defendant's counterclaim suggests this mitigation of his offense. Nothing is here set forth to rebut the presumption of an accusation honestly conceived and genuinely maintained. The law does not tolerate the bargain which stifled it for pay."

For the reasons assigned, the judgment is affirmed.

*Affirmed.*