## CIRCUIT COURT OF THE CITY OF RICHMOND

W. Raymond Wilkerson

v.

Creedle, Jones, and Alga, P.C., et al.

September 11, 1995

Case No. LA-1556-4

By Judge Randall G. Johnson

This case is before the court on defendants' demurrer. The motion for judgment alleges that pursuant to a merger agreement in January, 1989, plaintiff, W. Raymond Wilkerson, an accountant, conveyed all of the assets of his sole proprietorship accounting practice to the accounting firm of Creedle, Barbour & Jones, P.C., which was then renamed Creedle, Barbour, Wilkerson & Jones. At the same time, all four principals of the new firm, who were also the corporation's only four shareholders, entered into a shareholders' agreement which placed certain restrictions on the sale of the capital stock of the corporation and set forth the terms for transfer of such stock in the event of the death, disability, or voluntary termination from active participation of any shareholder. Under the shareholders' agreement, any shareholder who voluntarily terminated his active participation in the accounting practice of the corporation would sell his stock to the corporation at a price based upon a total corporate value of 100% of gross revenue for the prior twelve-month accounting period as adjusted by accounts receivable and work in progress. The departing shareholder would also be paid his share of all undistributed profits at the date of termination.

In October, 1990, plaintiff voluntarily left Creedle, Barbour, Wilkerson & Jones, P.C., and discontinued his private practice of accounting to accept a position as controller of Virginia Marble Manufacturers, Inc., located in Kenbridge, Virginia. Upon his announcement, plaintiff and

Sherwood H. Creedle, one of the shareholders and a defendant in the present suit, began negotiations concerning the partners' respective rights under the merger agreement and shareholders' agreement. A proposed "Employment Termination, Covenant Not To Compete, and Stock Purchase Agreement," dated November 1, 1990, was presented by Creedle to plaintiff. Under the proposed agreement, the firm would pay plaintiff at least $273,400 for his shares of stock. The agreement was never signed.

In January, 1991, plaintiff was contacted by Sherwood Creedle who told plaintiff about a possible malpractice action that might be filed by Taylor Auto Supply, Inc., and Phillip L. Taylor, who were clients of Creedle, Barbour, Wilkerson & Jones, P.C., against the firm. A few weeks later, Creedle again called plaintiff and told him that he, Creedle, had discovered what he believed to be irregularities and possible evidence of embezzlement by plaintiff related to a payroll tax escrow account maintained by plaintiff for Taylor Auto. Creedle advised plaintiff that he planned to notify Taylor Auto of his findings. Creedle also told plaintiff that plaintiff's handling of the Taylor Auto account constituted criminal conduct for which plaintiff could be criminally prosecuted.

In February, 1991, Sherwood Creedle, on behalf of Creedle, Barbour, Wilkerson & Jones, P.C., and the firm's lawyer again engaged in negotiations with plaintiff regarding payments owed to plaintiff under the existing merger and shareholders' agreements. At that time, according to the motion for judgment, plaintiff was entitled to receive in excess of $1,000,000 under the terms of the shareholders' agreement alone. In order to force plaintiff to relinquish his rights under the existing agreements for a drastically reduced sum, however, the firm threatened to report plaintiff to prosecuting authorities unless he executed a stock redemption and settlement agreement under which plaintiff would receive only $10,000 for his share of the firm. As a direct and proximate result of that threat which, according to the motion for judgment, "destroyed the free will of the Plaintiff," plaintiff signed the stock redemption and settlement agreement, "under duress," on February 22, 1991. Among the provisions of the settlement agreement was the following:

> The corporation and its shareholders agree not to file any criminal charges or charges with any organization regulating certified public accountants in the Commonwealth of Virginia against Wilkerson relating to Auto Supply or Taylor; provided, however, that Wilkerson does not admit that any of his actions constituted criminal conduct.

In April and May, 1991, the Virginia State Police investigated the Taylor Auto matter. Although the Commonwealth nolle prossed its charges against plaintiff, plaintiff was indicted in federal court. On July 17, 1992, plaintiff pleaded guilty to one count of unauthorized endorsement of a U.S. Treasury check, and was sentenced to fifteen months in prison. The motion for judgment does not allege that the Creedle firm, or any of its members, filed any criminal charges in violation of the settlement agreement.

Plaintiff's present suit is in two counts and names as defendants Creedle, Jones and Alga, P.C., which is the successor firm to Creedle, Barbour, Wilkerson & Jones, P.C., as well as Sherwood H. Creedle, Glenn E. Barbour, and Robin B. Jones, the other three shareholders of the firm at the time of plaintiff's separation. Count I alleges that by "forcing" plaintiff to sign the stock redemption and settlement agreement in February, 1991, and accepting a payment of $10,000 for his shares of stock, defendants breached the pre-existing merger agreement and shareholders' agreement under which he was entitled to receive far more. Count II alleges that defendants' actions in forcing him to sign the stock redemption and settlement agreement constituted fraud and duress for which plaintiff is entitled to receive punitive damages. Defendants have demurred to both counts. The demurrer will be sustained.

In *Ellis v. Peoples National Bank*, 166 Va. 389, 186 S.E. 9 (1936), four business partners who were also relatives of a bank employee were told by representatives of the bank and the bonding company that was surety on the employee's bond that the employee had embezzled funds of the bank and that unless the four partners permitted the bank to apply $2,100, which they had on deposit with the bank, as part payment of the sum embezzled, they would cause the employee to be arrested and sent to prison for a long term of years. The partners paid the $2,100 and later sued to recover that amount on the theory that the agreement which they reached with the bank and bonding company was illegal and void, and was entered into by the partners under duress. The trial court sustained defendants' demurrer, and the Supreme Court affirmed. In doing so, the Supreme Court agreed that contracts in which one party agrees not to file felony charges against another "are illegal regardless of statute, as they tend to suppress evidence and impede the due course of public justice." 166 Va. at 389. The Court went on, however, to hold that where such a contract exists, neither party to it will be aided by judicial process to enforce or rescind it. In other words, the parties will be left exactly where they are. Quoting *Levy v.*

*Davis*, 115 Va. 814, 816, 80 S.E. 791, 792 (1914), which in turn quotes 2 Elliott on Contracts, section 1064, the Court said:

> As a general rule the law will leave all equally guilty of an illegal or immoral transaction where it finds them, and will neither lend its aid to enforce the contract while executory, nor to rescind it and recover the consideration parted with when executed. "It is a well settled principle of law that the courts will not aid a party to enforce an agreement made in furtherance of objects forbidden by the statute, or by common law, or general policy of law, or to recover damages for its breach, or when the agreement has been executed in whole or in part by payment of money to recover it back."

166 Va. at 395. *See also Rock v. Matthews*, 35 W. Va. 531, 14 S.E. 137 (1891), quoted in Elliott.

The Court went on to quote the following eloquent passage from Justice Cardoza's opinion in *Union Exchange Nat. Bank v. Joseph*, 231 N.Y. 250, 131 N.E. 905 (1921):

> We find no inequality sufficient to set the law in motion at the suit of knowing wrongdoers to undo a known wrong . . . . They had chosen to put private welfare above duty to the state. The state would not concern itself with the readjustment of their burdens unless for some better reason than the fact that indifference to duty had followed hard upon temptation. Excuse would seldom fail if temptation could supply it . . . . *Here the suppliant for relief is himself the author of the wrong.*

166 Va. at 396-97 (emphasis added).

The holding of *Ellis* is equally applicable here. The stock redemption and settlement agreement in this case was illegal. Its illegality, however, is as traceable to the present plaintiff as it is to the present defendants. The court will not now provide plaintiff a forum to have that agreement rescinded, either on the ground of illegality or of duress. Without such rescission, the agreement stands as a bar to plaintiff's claim. As an "author of the wrong," plaintiff cannot recover. He and defendants will be left where they are.