COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Chaney
Argued at Lexington, Virginia

UNPUBLISHED

JEREMY SCOTT GRAY

v.     Record No. 0627-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
APRIL 18, 2023

FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Paul A. Dryer, Judge

Michelle C. F. Derrico, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Jeremy Scott Gray appeals the circuit court's decision revoking his previously suspended

sentence and imposing six months' active incarceration. Gray contends that the circuit court erred

when it (1) found that his failure to pay restitution was willful and (2) revoked his suspended

sentence without considering alternatives to imprisonment.

## BACKGROUND

On March 28, 2018, pursuant to a plea agreement, the circuit court convicted Gray of felony

destruction of property and sentenced him to five years' incarceration, with four years and two

months suspended upon the condition that he be of good behavior and pay restitution to First Bank

in the amount of $4,420.86.

In September 2018, Gray violated his probation when he failed to report to probation. The

circuit court revoked the entirety of his suspended sentence and resuspended three years, eight

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

months.  In May 2020, the circuit court found that Gray violated his probation again when he received a conviction for assault and battery on a family member and failed to follow the probation officer's instructions.  The court revoked his suspended sentence and resuspended three years, two months.  Gray endorsed a restitution order which required that he pay $100 per month beginning July 2020 and that he return to court on April 2, 2021, for a restitution review.

Gray failed to appear on April 2.  The circuit court issued a capias and show cause order for Gray's failure to appear.  On May 10, 2021, Gray appeared, posted a $600 cash bond that he agreed would be applied to his restitution, and agreed to appear on June 2, 2021, for a hearing.  On June 2, Gray appeared and brought $300 to pay towards the restitution, in addition to the $600 bond he had posted.  With the parties' agreement, the circuit court dismissed the capias for failure to appear and continued the restitution matter to December 3, 2021, to allow Gray more time to pay restitution.

Gray failed to appear on December 3.  The circuit court issued a capias for Gray's failure to appear and scheduled the show cause for failure to appear and failure to pay restitution for April 1, 2022.  The court ordered that if Gray appeared before April 1, 2022, his bail terms should include an $800 cash only bond which would be applied to restitution owed.  On February 16, 2022, Gray was committed to jail and not released on bail.  On March 14, 2022, while in jail, Gray wrote a letter to the circuit court asking for a reduction in his bond or to be placed on a work release program to earn money to pay for his bond.

At the April 1, 2022 hearing, Gray testified that he had been incarcerated since February 16, 2022.  At the time of his incarceration, he was homeless and living in a tent and he was only able to find a job for two days a week and made about twenty dollars a week.  Gray indicated that he did not have professional or vocational skills and that he was simply "trying to get up on [his] feet."  He stated that because of his homelessness, "trying to get up on my feet is . . . far more difficult than . . . getting a job I was able to do."

When asked by the Commonwealth's attorney what he could afford to pay, Gray indicated that he "couldn't afford anything unless [he] was granted work release." He believed his family would have helped him, but he had not heard from any family members since he was incarcerated in February. When asked by his counsel if he had experience in a work release program, Gray answered that he had participated in a work release during a previous incarceration.

In closing, the Commonwealth conceded that "at this point, [the Commonwealth does not] think it's lack of paying [restitution] because he didn't want to pay it, but it seems like it's lack of paying because he had actually no money to pay." The Commonwealth stated that it did not "think convicting him of [failure to pay] would do anything; [it suggested] continu[ing] [the probation violation] out to a later date." Gray's counsel argued that the circuit court should dismiss the current violation and establish a new restitution review date.

The circuit court stated that Gray had "the means of coming up with some funds" because he had posted a $600 bond for failure to appear and made a $300 payment in June 2021. The circuit court noted that Gray asked for his $800 bond to be reduced, and the court understood "he couldn't come up with the bond." The court then stated, "But he also asked to be considered for work release. And I think work release would be a good alternative disposition in this case." The court opined that Gray "doesn't have a place to live right now" and that the "[j]ail is restarting their residential work release program. It sounds like Mr. Gray wants to work - which I commend him for that. And I think having the work release would provide the necessary structure and placement . . . for a job." Finally, the court noted that the circuit court receives restitution payments for people who are on work release.

The circuit court found that Gray violated the terms and conditions of his probation and revoked the entirety of his suspended sentence and resuspended two years, eight months. The court gave Gray the option to suspend the imposed active six months of incarceration if he could pay

$2,500 towards restitution. Additionally, the circuit court approved him for home electronic monitoring work release or residential work release.

ANALYSIS

In his first assignment of error, Gray asserts that the circuit court abused its discretion and violated his due process rights when it failed to evaluate whether he made a genuine effort to pay. He argues that Code § 19.2-305.1(G) requires the circuit court to find that his failure to pay restitution was willful before revocation may be imposed. Since the record does not contain a finding that he willfully refused to pay restitution, Gray argues that the circuit court only revoked his suspended sentence because of his poverty.

In his second assignment of error, Gray further argues that the circuit court erred when it sentenced him to active incarceration without considering alternatives to imprisonment when the only basis for the probation violation was his poverty. He asserts that the circuit court did not acknowledge his counsel's suggestion that the court dismiss the revocation and review the restitution matter at a later date. Instead, he contends, the circuit court held him strictly liable and incarcerated him because of his poverty.

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). "When coupled with a suspended sentence, probation represents 'an act of grace on the part

- 4 -

of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)).

After suspending a sentence, a circuit court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Moreover, under the revocation statute in effect when this revocation proceeding began, once the circuit court found that Gray had violated the terms of the suspension, it was obligated to revoke the suspended sentence and it was in "full force and effect." Code § 19.2-306(C)(ii) (Cum. Supp. 2020).[1] The circuit court was permitted—but not required—to resuspend all or part of the sentence. *Id.*; *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002).

> Notwithstanding any other provision of law, no person convicted of a crime in violation of any provision in Title 18.2, which resulted in property damage or loss, shall be placed on probation or have his sentence suspended unless such person shall make at least partial restitution for such property damage or loss . . . .

Code § 19.2-305.1(A). "Unreasonable failure to execute the plan by the defendant shall result in revocation of the probation or imposition of the suspended sentence." Code § 19.2-305.1(G). When Code § 19.2-305.1 and Code § 19.2-306 are applied in conjunction, "only [an] 'unreasonable' failure to pay restitution shall result in revocation of a suspended sentence." *Duff v. Commonwealth*, 16 Va. App. 293, 298 (1993). "Where the evidence establishes that the failure resulted solely from an inability to pay and not a willful refusal, it is an abuse of discretion to

---

[1] Although Code § 19.2-306(C) was amended effective July 1, 2021, Gray does not argue that the statutory amendment applied in his case and this Court recently held that it did not apply when, as here, the probation violations occurred and the revocation proceeding began before the effective date of the amendment. *See Green v. Commonwealth*, 75 Va. App. 69, 84 & n.4 (2022).

*automatically* revoke the prior suspended sentence *without considering* reasonable alternatives to imprisonment." *Id.* at 298-99 (emphases added).

Assuming without deciding, that Gray's failure to pay restitution was *not* a willful refusal to pay but only an inability to pay, the circuit court did not abuse its discretion in revoking Gray's sentence and imposing six months' active incarceration because the court did not automatically revoke Gray's prior suspended sentence without considering alternatives to incarceration and because Gray asked the court to assign him to the work release program.

Contrary to the position of the dissent, the circuit court did not *automatically* revoke Gray's probation, but upon Gray's testimony, considered the combination of Gray's circumstances and found that Gray had no place to live, that Gray wanted to work, that work release would provide the necessary structure and placement for a job, and that Gray proffered that he could pay restitution from the money he would earn in the program. The court also gave Gray the option of participating in work release with home electronic monitoring.

Moreover, under the invited error doctrine, Gray cannot now complain that the circuit court erred in assigning him active incarceration to participate in the work release program. "The principle is long standing in Virginia that an appellate court will not 'notice error which has been invited by the party seeking to take advantage thereof on appeal.'" *McBride v. Commonwealth*, 44 Va. App. 526, 529 (2004) (quoting *Saunders v. Commonwealth*, 211 Va. 399, 400 (1970)). Stated differently, "[a] party who invites error will not be heard to complain of having misled the court." *Phillip Levy & Co. v. Davis*, 115 Va. 814, 820 (1914); *Fisher v. Commonwealth*, 236 Va. 403, 417 (1988) ("No litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate—to invite error, as the defense admittedly did here, and then to take advantage of the situation created by his own wrong.").

Gray *asked* for assignment to the work release program in a letter he wrote to the circuit court from jail on March 14, 2022. At the April 2022 hearing, Gray testified that he "couldn't afford anything unless [he] was granted work release." Gray's attorney asked him in court if he had ever participated in work release, and he said he had for a few months about three or four years ago. Defense counsel never contradicted Gray's testimony or letter to the circuit court or otherwise take the position that Gray disavowed his desire for work release. Thus, Gray will not be heard to complain of his active sentence and assignment to work release and the circuit court did not abuse its discretion in so assigning him.

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

Chaney, J., dissenting.

The trial court erred in finding Mr. Gray guilty of violating the terms of his probation based on his nonpayment of court-ordered restitution when the record showed that Mr. Gray was indigent, homeless, unemployed, and unable to pay restitution. Because I would reverse the trial court's judgment and vacate the revocation order, I dissent from the majority's opinion affirming the trial court's judgment.

Mr. Gray's first assignment of error states:

> The trial court erred in finding Mr. Gray guilty of violating the terms of his probation when his failure to pay was not willful or unreasonable.

Op. Br. 1. As a matter of law, a trial court errs in finding that a probationer violated a condition of probation where the probationer "committed no willful act that would reasonably support a violation of probation." *Word v. Commonwealth*, 41 Va. App. 496, 507 (2003) (reversing trial court's probation violation finding). Here, the trial court found that Mr. Gray violated probation by failing to pay restitution. The majority opinion "[a]ssum[es] without deciding, that Gray's failure to pay restitution was *not* a willful refusal to pay but only an inability to pay." But on the majority's assumption that Mr. Gray did not willfully fail to pay restitution, the trial court erred in finding a probation violation based on Mr. Gray's nonpayment of restitution. *See id.*

Contrary to the majority's assumption that Mr. Gray was unable to pay restitution, the trial court found that Mr. Gray "had the means of coming up with some funds." However, this finding is contradicted by the uncontested evidence and the Commonwealth's concession that Mr. Gray's "lack of paying [was] because he had actually no money to pay." Hence, I would decide and not merely assume that the evidence does not support a finding that Mr. Gray willfully failed to pay restitution. Because the trial court's probation violation finding was based solely on the court's

- 8 -

erroneous finding that Mr. Gray willfully failed to pay restitution, the trial court's probation violation finding should be reversed and vacated.

As stated in the trial court's revocation order, the imposed sentence was based solely on the trial court's finding that Mr. Gray was guilty of violating probation. *See Kosko v. Ramser*, 299 Va. 684, 689 (2021) ("a trial court speaks only through its written orders" (quoting *Davis v. Mullins*, 251 Va. 141, 148 (1996))). Because the imposed sentence is based entirely on the trial court's erroneous probation violation finding, the revocation sentencing order should also be reversed and vacated. *See Slusser v. Commonwealth*, 74 Va. App. 761, 771 (2022) ("Defendants who fail to pay restitution in accordance with an approved plan may have their probation or suspended sentences revoked, but only for an '[u]nreasonable failure.'" (quoting Code § 19.2-305.1(G))); *see also Duff v. Commonwealth*, 16 Va. App. 293, 298 (1993) ("[A] reasonable failure to pay restitution negates a reasonable cause to revoke a suspended sentence."). Since the revocation order should be reversed due to the trial court's erroneous probation violation finding, it is unnecessary to consider alleged errors in the imposed sentence and whether such errors were invited.