## LIBBY MOSSMAN *v.* BENJAMIN SHERMAN.

### No. 2344.

Argued December 14, 1937.        Decided March 8, 1938.

Coke, C. J., Banks and Peters, JJ.

478

This is an action for the recovery of damages for injuries sustained by the plaintiff as the result of a collision between two automobiles. There was a verdict for the plaintiff in the sum of $3500. The case is brought here on exceptions.

Defendant's first exception is to the refusal of the court to grant his motion to withdraw a juror and enter a mistrial. The motion was predicated on the following facts: While the jury panel was assembled in the courtroom counsel for the plaintiff propounded to them as a whole the following questions: "Have any of you gentlemen any connection with Waldron, Fred L. Waldron & Co., or the insurance department of that concern? Would the fact if it becomes developed as a fact that Waldron insurance agency is connected with the outcome of this case, interfere in any way with you against the interests of Miss Mossman?" Defendant's counsel objected to the question on the ground that it was prejudicial to the interests of the defendant and that it was asked for the purpose of creating this prejudice and moved that a juror be withdrawn and a mistrial entered. Thereupon plaintiff's counsel withdrew the question and the court instructed the entire panel to disregard it. Defendant's counsel then renewed his motion contending that the damage had already been done and was not cured by withdrawal of the question. The court overruled the motion and the defendant excepted.

Assuming but not deciding that there was error in the refusal of the court to sustain the defendant's motion his right to take advantage of it on appeal to this court was waived by his subsequent request for the following instruction which was given the jury: "You are instructed, gentlemen of the jury, that there is no evidence in this case to the effect that the defendant carries public-liability insurance. You will therefore in arriving at your verdict, not allow any speculation on the question of insurance to

influence you in your decision. For your information counsel had the right to propound questions to you before you were finally chosen to try this cause, concerning your interest or interests in any insurance companies, in order to ascertain your bias and prejudice in this type of case where insurance companies are sometimes involved. Questions relating to their interest in insurance companies may be propounded to prospective jurors whether or not the defendant in the particular case at hand carries public-liability insurance. Those questions are not evidence and should in no way lead you to the conclusion that the present defendant does carry public-liability insurance, and any such conclusion would be entirely foreign to the issues in this case." By requesting this instruction the defendant voluntarily placed himself in the awkward and inconsistent position of asking this court to set aside the verdict of the jury because of an alleged injury done him by the mere propounding of a question to the jurors and at the same time admitting that the question was rightfully propounded.

The only remaining exceptions relied on by the defendant are the refusal of the court to direct a verdict in his favor, his exception to the verdict and his exception to the judgment. These exceptions are based on the assumption that the evidence as a matter of law was insufficient to justify the submission of the case to the jury. In order to sustain this contention it would be necessary to decide that there was no substantial evidence amounting to more than a scintilla to warrant the action of the court. This, under the evidence before us, we cannot do.

The fundamental question was whether the defendant's conduct in the management and operation of his automobile was in conformity with that degree of care for the safety of the plaintiff which the law requires. The following facts were established by uncontradicted evidence. On February

7, 1937, at approximately 3:30 a. m., there was a collision between the defendant's car and another car, which was being operated by a Filipino whose name does not appear, at the intersection of Nuuanu and Pauahi Streets in Honolulu. As a result of the collision the plaintiff was seriously injured. The defendant's car was traveling makai on Nuuanu Street and the other car was traveling waikiki on Pauahi Street. The courses of the two cars were at right angles to each other. The width of each of the streets available for automobile traffic was approximately 36 feet.

The duty which the operator of a motor vehicle owes to a gratuitous guest is definitely settled in this jurisdiction in *Casil* v. *Murata,* 31 Haw. 123, where the court said: "The owner or operator of an automobile owes a duty to a gratuitous guest to exercise reasonable care in its operation and not unreasonably to expose him to danger and injury by increasing the hazards of travel."

The degree of care—that is to say—the precautions which should be taken to avoid injury to those to whom care is due is dependent on the attendant circumstances. If the circumstances are such that reasonable men might differ as to whether the proper degree of care was exercised the question should be submitted to the jury.

The circumstances related by the defendant, which for the purposes of this discussion may be accepted as the truth, require the application of this rule. According to his testimony when he was 35 feet from the intersecting street he saw the headlights of the Filipino car approaching from his right. He did not know how far it was from the intersection. He made no effort to stop his car or reduce its speed. When he entered the intersection he saw that the approaching car was 25 feet away and that it was traveling around 25 miles per hour. Again he made no effort to bring his car to a stop or diminish its speed. Nor, so

far as the testimony shows, did he at any time give warning of his position on the highway by blowing his horn or in any other manner.

It is true according to the defendant's testimony that he reached the intersection of the two streets ahead of the other colliding car. Under section 66 of the traffic code which provides that "the operator of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection" the defendant had the right of way. It by no means follows, however, that this right of precedence is absolute and can be exercised with impunity under all circumstances regardless of the safety of others, to whom the operator of the vehicle owes the duty of reasonable care.

In the recent case of *McCombs* v. *Ellsberry*, 337 Mo. 491, 85 S. W. (2d) 135, the supreme court of Missouri expressed this view in the following language: "The mere fact that the operator of a motor vehicle reaches and enters an intersection prior to the entry of another automobile therein does not in and of itself give such operator the right to proceed across the intersection in any event; and where it becomes an issue of fact for a jury to determine whether or not in approaching or proceeding across an intersecting highway the operator of the motor vehicle first reaching or entering upon the intersection, in the exercise of due care, might have avoided a collision and resultant injuries, and instruction to the effect that irrespective of the existing conditions such operator has a right to proceed across the intersection is erroneous." (See also *Truitner* v. *Knight,* 83 Cal. App. 655; *Higgins* v. *Ledo,* 66 F. [2d] 265; *Sullivan* v. *Union Electric Light & Power Co.,* 56 S. W. [2d] [Mo.] 97; *Hammond* v. *Emery-Bird-Thayer Dry Goods Co.,* 240 S. W. [Mo.] 170; *Thompson* v. *Fiorito,* 167 Wash. 495; *Fournier* v. *Zinn,* 257 Mass. 575; *Hewlett* v. *Schadel,* 68 F. [2d] 502; *Page* v. *Mazzei,* 213 Cal. 644.)

The jury under the defendant's testimony might very reasonably have found that it was his duty when he first saw the headlights of the approaching car to so abate his speed as to permit the other car to pass in front of him. It might also have reasonably found that his failure to take any measures to avoid a collision, when he discovered upon reaching the intersection that the approaching car was about 25 feet away and traveling at the rate of 25 miles per hour, was negligence.

There is also in the record the testimony of two other witnesses, the plaintiff, and Virgie Mossman, who was likewise a gratuitous guest, which reflects the defendant's indifference to the plaintiff's safety and strengthens the conclusion that the question of the defendant's negligence was properly submitted to the jury. The testimony referred to was in substance that the defendant, soon after they entered his car at Kailua, a place several miles distant from the scene of the accident, began driving at a high speed (50 miles per hour) and that in spite of their repeated protests (which he answered with insulting and profane language) he continued to drive furiously up to the time of the collision.

It is contended by the defendant that the probative force of this testimony was completely destroyed by statements made by these witnesses to police officers shortly after the accident.

It is true that the plaintiff in her testimony admitted that she stated to a police officer that the defendant's car was not traveling over 20-30 miles per hour prior to and at the time of the collision. In explanation of why she made this statement she testified that her statement was untrue but that she was induced to make it at the request of the defendant's mother for the purpose of protecting the defendant.

Under these circumstances it cannot be said that the

substantial quality of her testimony regarding the speed of the defendant's car was completely destroyed and placed beyond the consideration of the jury by her previous statement to a police officer on this subject.

So far as the testimony of Virgie Mossman, the other witness, is concerned it appears from the record that when asked at the trial whether she had not stated to a police officer at the police station that the defendant's car was not traveling fast she finally answered, after considerable examination and cross-examination, that she had no recollection of having made any statement to a police officer. Her testimony, therefore, is free from the criticism made of that given by the plaintiff.

For the foregoing reasons the exceptions are overruled.

*E. J. Botts* (also on the brief) for plaintiff.

*C. A. Gregory* (Smith, Wild, Beebe & Cades on the briefs) for defendant.