JAMES W. GLOVER, LIMITED, A HAWAIIAN CORPORATION, *v.* LEONARD K. FONG, AUDITOR OF THE CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII.

NO. 2864.

ARGUED FEBRUARY 13, 1952.      DECIDED MARCH 13, 1952.

TOWSE, C.J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY LE BARON, J.

The petitioner, James W. Glover, Limited, a Hawaiian corporation, brought mandamus proceedings to compel the respondent, Leonard K. Fong, auditor of the City and County of Honolulu, to draw warrants in payment of claims for balance due on completed contract and for balance of excess costs incurred in performance of that contract and arising out of wartime conditions. The petition alleges in substance that the petitioner's predecessor, James W. Glover, on September 16, 1940, entered into a contract with the City and County of Honolulu for the construction of a sewer at the contract price of $475,463.38; that before completion of construction under the contract war broke out on December 7, 1941, and necessitated cessation of such construction until January 2, 1946; that on May 22, 1945, Act 260 of the Session Laws of Hawaii 1945 became effective authorizing the board of supervisors of the City and County of Honolulu to appropriate from its general funds such sums as are required to cover excess costs of construction on public works arising out of and due to wartime conditions; that the board of supervisors, pursuant to Act 260, by resolutions appropriated $287,000 for excess costs of construction under the contract incurred during the years of 1946 and 1947; that on April 1, 1946, the petitioner was organized as a corporation and took over the business of its predecessor, including the construction of the sewer under the contract, and that the change from individual to corporate responsibility and the taking over of such construction by the petitioner was approved by the City and County of Honolulu; that the petitioner there-

after completed such construction; that the respondent has drawn warrants for, and the petitioner and its predecessor have been paid, part of the contract price and part of the excess costs incurred; that the respondent refuses to draw warrants in payment of the balances thereof; that the balance of the contract price is in the amount of $19,438.23 and that of excess costs in the amount of $60,213.13; that petitioner's claims for these amounts have been preaudited and approved in writing by the controller of the City and County of Honolulu upon vouchers authorizing the payment thereof; that the controller has found those claims to be "correct and proper in all particulars, legal and within the scope of the designated appropriations and that there is money in the said appropriations sufficient to pay the same"; that "despite the provisions of section 6594 and the duty imposed upon him therein and in defiance thereof, [the] respondent has refused and still refuses, despite requests by petitioner to do so, to perform the ministerial act of drawing warrants for the payment of said amounts."

On the filing of that petition an alternative writ duly issued. The respondent, on the return day therein set, moved for a continuance of two weeks and in support thereof testified that he had had no time to discuss "any features other than this matter of getting a continuance" with his attorney. His testimony at the hearing on the motion was essentially admissive of the facts alleged in the petition but in denial of the conclusion of law made therein that his statutory duty to draw warrants is ministerial. Upon such testimony, the circuit judge, within his judicial discretion and jurisdiction, by oral decision granted the respondent a continuance of twenty hours rather than one of two weeks as moved.

The respondent, immediately after that decision of continuance, filed a petition for a writ of mandamus in the supreme court to compel the circuit judge to grant the con-

tinuance of two weeks as moved and a justice thereof issued an alternative writ of mandamus. On the return day set therein, a motion of the circuit judge by his attorney was filed in the supreme court to quash that writ on the ground that "as a matter of law a mandamus will not issue in such cases" as those of "the granting or refusal of a continuance" within the judicial discretion of an inferior court, such attorney being the same attorney who represented the petitioner in the mandamus proceedings before the circuit judge. That attorney, in behalf of the circuit judge, argued the motion before the supreme court. After that court denied the motion, the circuit judge made a return signed by a deputy attorney general as his attorney. Upon a hearing of the issues, the supreme court by an opinion of its majority entered a peremptory writ directing the circuit judge to fix a time for the respondent below to make return "not less than forty-eight hours subsequent to the issuance of the peremptory writ herein." (*Fong, Auditor* v. *Sapienza, Judge,* 39 Haw. 79.)

The respondent then filed in the circuit court an affidavit of disqualification which alleged in substance that he believed that the circuit judge was "biased and prejudiced" for the reasons that he "refused to grant * * * continuance [of two weeks as moved]"; that the attorney for petitioner acted as attorney for the circuit judge before the supreme court in a motion to quash and that the circuit judge made it appear in his return therein that respondent "has admitted all the facts necessary to support the issuance of the peremptory writ of mandamus requested by James W. Glover, and that the sole question is one of law with respect to the nature of affiant's [respondent's] duty to draw the warrants." On that affidavit the respondent moved that the circuit judge disqualify himself. After hearing, the circuit judge denied the motion.

The respondent then filed a petition for mandamus in

the supreme court to compel the circuit judge to disqualify himself. His petition was denied. (See *Fong, Auditor* v. *Sapienza, Judge,* 39 Haw. 92.)

Three weeks after respondent's motion for continuance and on the new return day set in the circuit court, the respondent filed in that court a motion to quash which was denied. He then filed a motion for allowance of inter-locutory appeal which was denied. Two days after such return day, the respondent filed his return.

The trial then commenced in the circuit court and con-sumed six full days and one evening session. During the course of trial the respondent introduced in evidence a letter written by him in which he admitted that, a week before he testified that he and his attorney "didn't have time" to discuss "any features other than this matter of get-ting a continuance," he and that attorney had attended a conference with the attorney for the City and County of Honolulu in which "there was discussed at length and in detail every phase of the Glover contract matter, more par-ticularly the prospects of this matter being placed before the courts for judicial review." At this juncture it is perti-nent to note that the supreme court did not have the benefit of the facts as admitted in that letter when it entertained respondent's petition for a writ of mandamus to compel the circuit judge to grant a longer continuance than that granted by him. At the conclusion of the lengthy trial before the circuit judge, he took the cause under advise-ment and in due time rendered a written decision finding in effect that the allegations of fact as contained in the petition were proved by the evidence to be true, that as a matter of law the respondent's duty to draw the warrants is ministerial and that the respondent has shown no valid reason in law or fact for not drawing the warrants. Ac-cordingly, a peremptory writ of mandamus issued directing the respondent to draw forthwith the warrants in payment

of the claims in the amounts of $19,438.23 and $60,213.13.

The respondent relies upon ten specifications of error presenting ten material questions of law. Determinative of each specification is the answer to be given the question it presents. Four specifications will be considered first and they present the questions (1) whether the respondent's affidavit for disqualification is sufficient under section 9573, Revised Laws of Hawaii 1945, to have disqualified the circuit judge from proceeding to trial; (2) whether the conduct of the circuit judge during the trial evidenced such bias and prejudice that respondent was denied a fair trial; (3) whether the petitioner has authority to sue in its own name as the proper party to bring mandamus proceedings against the respondent in this case; (4) whether the petitioner made sufficient demand to entitle it to bring mandamus in this case.

The sufficiency of respondent's affidavit for disqualification depends upon whether it meets the statutory requisites of such an affidavit as prescribed in section 9573. That section provides two requisites of affidavit and is substantially the same as, and an adoption of, the federal statute (Tit. 28, U.S.C. § 144), which has been construed by the federal courts. Decisions of those courts construing the federal statute are therefore persuasive, if not controlling. The pertinent part of section 9573, *supra,* setting forth the first requisite of affidavit reads: "Whenever a party to any suit, action or proceeding * * * shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a *personal* bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall be disqualified from proceeding therein." [Emphasis added.] In addition to providing that requisite of affidavit as to "a personal bias or prejudice," the section provides the second requisite that "Every such affidavit shall state the facts and the reasons

for the belief that bias or prejudice exists * * *." But that requisite has been construed to mean a statement of at least facts and reasons "from which a sane and reasonable mind may fairly infer bias or prejudice." (*Keown* v. *Hughes,* 265 Fed. 572, 577.)

The respondent's affidavit of disqualification meets neither requisite under the statute. It omits the word "personal" as a qualification of any bias or prejudice charged within the sentence that the circuit judge "is biased and prejudiced." Consistent with that omission, the facts and reasons stated by it in support of the charge of bias and prejudice, do not tend to show the existence of a personal bias or prejudice or of any bias or prejudice on the part of the circuit judge. Indeed those facts and reasons do not even involve matters of any personal interest to the circuit judge. They concern primarily matters affecting his exercise of judicial discretion in granting the respondent a continuance, against which the respondent directed his petition for mandamus in the supreme court to compel the circuit judge to grant the particular continuance sought by him in his motion. The representation of the circuit judge by petitioner's attorney, on a motion to quash the resultant temporary writ of mandamus on the ground that mandamus does not lie to control the circuit judge's exercise of judicial discretion, was not only presumably voluntary on the part of that attorney but constituted a relationship concerning a point of law upon which no conceivable personal interest existed in the circuit judge. Nor did any personal interest exist on the part of the circuit judge in his return. That return was made in response to the order to show cause and merely stated that the basis for exercising his judicial discretion was his judicial opinion of the effect of testimony given by the respondent in support of the motion for a continuance. None of those matters, however, has the slightest bearing upon any personal or other bias or preju-

dice on the part of the circuit judge. It has been held under substantially the same statute that even a complete denial of a continuance constitutes no basis for disqualification. (*Refior* v. *Lansing Drop Forge Co.,* 124 F. [2d] 440, 445.) Nor would mere adverse rulings, even if erroneous. (See *Benedict* v. *Seiberling,* 17 F. [2d] 831; *Sacramento Suburban Fruit Lands Co.* v. *Tatham,* 40 F. [2d] 894; *Craven* v. *United States,* 22 F. [2d] 605.) Much less would a mere judicial opinion made in response to an order to show cause, as the reason for exercising judicial discretion. The fact and reasons averred in support of the charge of bias or prejudice thus being insufficient, the omission of the word "personal" to qualify the words in the charge thereof is fatal and renders the affidavit wholly insufficient under the statute. (See *Henry* v. *Speer,* 201 Fed. 869, 872.)

As to the question of the conduct of the circuit judge during the trial, a review of the record discloses that no conduct on the part of the circuit judge evidences either bias or prejudice. On the contrary, the record shows that the circuit judge's conduct of the trial afforded the respondent not only a fair and impartial trial in accordance with due process of law but a lengthy one extending beyond the requirements of such process. A trial of substantially shorter duration would have sufficed had the trial itself been limited to the issues of fact raised by the petition and the return and those necessary for the disposition of the defenses interposed by the respondent. This is particularly so in this case where, as here, the facts were not in serious dispute and the interposed defenses presented questions of law which required little, if any, evidentiary foundation.

As to the question of the authority of the petitioner to sue in its own name, the respondent contends that the petitioner is not the proper party to maintain mandamus in its own name to compel him to draw the warrants because the petitioner is not the original party to the contract and

because there is no evidence of a novation of contract substituting the petitioner for its predecessor. But the undisputed evidence proves that the predecessor assigned in writing his rights under the contract to the petitioner of which he is the sole stockholder; that the City and County of Honolulu had notice of the assignment and accepted the petitioner in substitution of its predecessor; that the petitioner under that assignment completed the contract and that the claims arose after the assignment on the completion of the contract. That proof demonstrates that the assignment is tantamount to an assignment of the claims as choses in action, such claims being clearly assignable (see *McClanahan* v. *Trent,* 17 Haw. 190) ; that the petitioner is the assignee to which the amount of the claims is owing and recognized as such by statute (R. L. H. 1945, § 354), and that it is the real party in interest and entitled to sue on the claims in its own name under the provisions of section 10037 of the Revised Laws of Hawaii 1945.

As to the question of demand, the pleadings and evidence show that there are four claims involved. After three of those claims had been preaudited, approved in writing and authorized for payment by the controller, the respondent neglected or refused to draw warrants in payment of them for a period of twenty-two months and during that period indicated to the petitioner that he had no intention of ever doing so. When the other claim was likewise preaudited, approved in writing and authorized for payment at the close of that period, the attorney for the petitioner made demand by telephone upon the respondent that he draw warrants in payment of the four claims but the respondent in response thereto stated that he would draw none of such warrants. Nor has he, since the first claim came into his possession, drawn any of the warrants or evidenced any inclination to draw one, irrespective of its prior preaudit, written approval and authorization for payment

by the controller. The evidence thus conclusively proves the respondent to have been in wilful default from the beginning. By reason of his consistent course of conduct manifesting an intention not to draw warrants in payment of the claims, no demand was necessary in that a demand would be an idle and unavailing act as proved to be the case when one was made. (*Fountain* v. *State,* 211 Ala. 586, 100 So. 892; *People* v. *McKibbin,* 377 Ill. 63, 43 N. E. [2d] 550; *Young* v. *University of Kansas,* 87 Kan. 239, 124 Pac. 150.) Certainly, therefore, the express and distinct demand as made by the petitioner's attorney upon the respondent and the respondent's unequivocal refusal to comply with that demand, coupled with his past course of conduct, more than sufficed as prerequisites of the petitioner's right to file mandamus against the respondent.

The next specification to be considered presents the paramount question which underlies the respondent's position and explains in large measure the protracted trial below. That question pertains to the character of the respondent's duty to draw warrants and is whether that duty is ministerial or discretionary. Such duty is derived from the mandate of section 6594, Revised Laws of Hawaii 1945, that "The auditor shall draw all warrants * * *, but no warrant on the treasury shall be drawn by him until after preaudit and written approval of the claim which it is intended to pay, by the controller." The clear meaning of that mandate, so qualified, is that the auditor must draw a warrant in payment of a particular claim which has been preaudited and approved in writing by the controller. The controller's preaudit and written approval of a claim are the conditions precedent for the auditor's exercise of his duty to draw the warrant in payment of such claim. When those conditions have been met, the mandate of section 6594 becomes absolute and under it the auditor has the purely ministerial duty to draw the warrant. That duty is in contradistinc-

tion to the controller's duty, which is discretionary, to approve or not to approve the claim in whole or in part under the provisions of section 6593. Thus, on written approval of a valid claim by the controller after preauditing it, the exercise of the controller's discretion in doing so becomes final as far as the auditor is concerned. The auditor has no authority to go behind the controller's exercise of discretion or judgment in approving a claim nor will the courts attempt to do so in mandamus directed against the auditor unless the action of the controller is so capricious and arbitrary as to evidence a total failure to exercise discretion, and is, therefore, not a valid act which operates to give rise to the auditor's ministerial duty under the statute. A reading of the statutes defining the duties of the controller and auditor suffices to show that the controller is a discretionary officer to approve a claim and that the auditor is a ministerial officer to draw the warrant in payment of the claim after preaudit and written approval of it by the controller in the exercise of his discretion. But this does not mean that an auditor may never challenge the power of the controller to approve a claim. On the contrary, situations may arise where the auditor is authorized and justified in refusing to draw a warrant in payment of a claim preaudited and approved by the controller. The right of the auditor to question what he believes to be an illegal or invalid claim finds expression in section 6545, which makes any officer of the City and County of Honolulu who approves, allows or pays "any demand on the Treasury not authorized by law" liable individually and on his official bond. (See *Lyman* v. *Maguire,* 17 Haw. 142; also *Coster* v. *Trent,* 19 Haw. 352.) Although he can not dispute the judgment of the controller, the auditor is authorized to refuse to draw the warrant where he can show that the claim to be paid is fraudulent or that a mistake exists in the amount of claim found by the con-

troller to be due (see *Teves* v. *Reade,* 23 Haw. 564) or that the claim is based on an unconstitutional statute (see *De Mello* v. *Auditor,* 37 Haw. 415) or that the controller exceeded his power in approving the claim (see *State ex rel. Becker* v. *Wiley,* 16 Wash. [2d] 340, 133 P. [2d] 507).

The respondent does not contend that the claims are fraudulent or that a mistake has been made in the amounts thereof. The next four specifications to be considered, however, present questions as to (1) the validity of the controller's act in approving the claims on the ground that the controller did not follow the procedures prescribed by section 6593 and thereby exceeded his authority; (2) the validity of the appropriation on which the claim of $18,-954.19 on the contract is based; (3) the constitutionality of Act 260, Session Laws of Hawaii 1945, on which the claims for excess costs are based; and (4) the applicability of that Act to the excess costs of construction in this case. Those questions will be considered in the order numbered.

As to the first question so presented, the respondent argues that the controller on preaudit had no authority to approve the claims when, after transmitting them to the mayor and board of supervisors, the mayor vetoed the board's resolution which recommended payment. The board of supervisors, however, in lieu of that resolution, then unanimously adopted a committee report of the same import as that of the resolution but did so without the approval or disapproval of the mayor, who remained passive. That action of the board took effect to the same extent as it would have, had the mayor approved. It, therefore, constituted a sufficient guide to the controller for his approval of the claims, had he prior thereto on preaudit been of the opinion that they were not legal or otherwise proper. Nevertheless, the evidence does not show that the controller was of such opinion. On the contrary, it conclusively proves that on preaudit he was of the opinion that

all the claims were legal and proper. Consequently, he was under no duty to transmit them but did so presumably from an abundance of caution, even though unnecessary. Under these circumstances it is evident that the controller was in substantial compliance with pertinent statutory procedures and did not exceed his authority. Consequently, his act of approval is deemed to be valid so as to give rise to the respondent's ministerial duty to draw the warrants in payment of those claims.

The second question so presented challenges the appropriation, on which is based the claim for the balance due under the contract, on the ground that such appropriation constitutes an unlawful expenditure within the meaning of section 368, Revised Laws of Hawaii 1945, which provides that "Whenever a specific appropriation is made for a particular object, it shall be unlawful to make any expenditure from a general appropriation which would otherwise cover such particular object." The appropriation so challenged, however, is a specific appropriation for the particular object of paying the claim involved. That appropriation was made by the board of supervisors on December 27, 1947 in resolution numbered 709 which "reappropriated" a certain sum "from the Contingencies Account of the General Fund." It is the antithesis of a general appropriation and in no sense constitutes an expenditure from one. Nor is "the Contingencies Account of the General Fund" a "general appropriation which would * * * cover such particular object" had the board not "otherwise" provided for it by specific appropriation. Indeed that account is not a general appropriation from which any expenditures may be made but rather one from which a sum of money may be specifically reappropriated by resolution or ordinance as the final act of appropriation necessary to make it available for expenditure from the specific appropriation so made. There is thus involved no "expenditure from a general ap-

propriation" in this case within the meaning of section 368, much less any "unlawful" expenditure from such an appropriation. There being only a contemplated expenditure from a specific appropriation, the respondent has failed to sustain his burden and his ground of challenge is untenable. The challenged appropriation is therefore presumed to be valid consistent with the certification of the controller that it is "a valid appropriation" as required of him by statute before any "obligation involving the expenditure of money shall be incurred" and with his authorization pursuant thereto that the respondent draw the warrant in payment of the claim involved. (R. L. H. 1945, § 9563.) Nor is the respondent as ministerial officer permitted to go behind the judgment of the controller to attack his finding made in the exercise of his discretion after preaudit that the claim is "proper and correct in all particulars" where, as here, there is nothing to indicate that the controller acted capriciously or arbitrarily in approving the claim so as to evidence a total failure to exercise discretion.

The third question so presented puts in issue the constitutionality of Act 260, Session Laws of Hawaii 1945, on which the claims for excess costs of construction are based. The Act reads:

"An Act Relating to the Reimbursement of Walker-Moody Construction Company, Limited, of the Amount of Excess Costs Incurred in Constructing Beach Walk Station Sewer Pressure Line Under War Time Conditions, Authorizing and Directing the Board of Supervisors of the City and County of Honolulu to Appropriate Sufficient Moneys Therefor and Authorizing the Board of Supervisors of the City and County of Honolulu to Appropriate Such Sums as May Be Required to Reimburse Similar Excess Costs of Construction on Other Public Projects.

"WHEREAS, the city and county of Honolulu in the year 1941, prior to the outbreak of the war, entered into a

contract with Walker-Moody Construction Company, Limited, for the construction of a sewer pressure line, Beach Walk Station, Waikiki, Honolulu, for the contract price of $71,404.65; and

"WHEREAS, conditions prevailing in the Territory after the outbreak of war prevented the commencement of construction under said contract until the year 1943, at which time by virtue of military and governmental orders and regulations the rates of pay of labor had substantially increased over those prevailing upon the date of said contract and by virtue of increased cost of manufacture and transportation the costs of materials had substantially increased over those prevailing upon the date of said contract; and

"WHEREAS, by reason of said war time increases in the costs of labor and materials, said contract was completed by Walker-Moody Construction Company, Limited, at a cost of $11,933.36 in excess of the cost originally estimated and upon which the contract price was based, and a moral obligation exists to reimburse said Walker-Moody Construction Company, Limited, in the amount of the excess of said costs over those originally estimated; now, therefore,

"*Be it Enacted by the Legislature of the Territory of Hawaii:*

"Section 1. The Board of Supervisors of the city and county of Honolulu is hereby authorized and directed to appropriate and cause to be paid to Walker-Moody Construction Company, Limited, out of the general fund of said city and county, the sum of $11,933.36 as reimbursement of the excess costs of construction by said company under war time conditions of the Beach Walk Station Sewer Pressure Line.

"Section 2. [General authority to grant relief for excess costs.] The board of supervisors of the city and

county of Honolulu is hereby authorized to appropriate out of the general fund of said city and county, such sums as may be required to cover excess costs of construction on public works arising out of and due to war time conditions and similar to those authorized and directed to be paid under section 1, above."

The legislature in enacting that Act does not authorize gifts of the public funds of the City and County of Honolulu, as contended by the respondent. It rather authorizes specific appropriations from the general fund of the City for the particular object of paying certain moral obligations of that municipality as an exercise of the legislative power of the Territory upon "rightful subjects of legislation" within the meaning of section 55 of the Hawaiian Organic Act. (See *In re Mott-Smith,* 29 Haw. 343.) In doing so the legislature certainly had the power to investigate and determine the extent of moral obligation in order to authorize and direct the City to appropriate and cause that obligation to be paid in a particular case, as it did in section 1 of the Act, such power of investigation and determination being an indispensable incident and auxiliary to the proper exercise of its legislative power. Moreover, it had the authority to delegate such incidental power of investigation and determination when authorizing appropriations in other cases of comparable nature to the legislative body of a political subdivision of the Territory, as it did in section 2 of the Act, such delegation concerning the matter of the political subdivision's moral obligation and local in scope to it. (See *Territory ex rel. Oahu County* v. *Whitney,* 17 Haw. 174.) That authority to so delegate is implied from the language of section 56 of the Hawaiian Organic Act, which authorizes the territorial legislature to "provide for the government" of, as well as "create counties and town and city municipalities." Such delegation by the legislature to the legislative body of a political subdivision

of the Territory is one within the same branch of government comparable to the delegation of legislative power by Congress to the territorial legislature. It therefore does not come under the prohibition of the general doctrine against delegation of legislative powers to other branches of government as a constitutional limitation upon a legislature. Neither is it a case, as contended by the respondent, where a statute provides for the exercise of discretion to execute the statute itself by administrative officers or by administrative bodies, which is constitutionally permissible where such statute prescribes a uniform rule of action or lays down a sufficient guide or standard by which the discretion may be measured. Nor does it, as contended by the respondent, constitute a usurpation of the judicial power under the principles enunciated in *De Mello* v. *Auditor, City and County,* 37 Haw. 415, where, as here, no controversy between the parties requiring judicial settlement of disputed claims was adjudicated by the legislature.

The fourth question so presented contests the applicability of Act 260 to the excess costs of construction in this case. A reading of the Act as a whole suffices to show that the character of excess costs as subjects of claim in this case is substantially the same as that of excess costs in the comparable case with which section 1 of the Act deals, and that such costs in this case are substantially the same as those described by section 2 of the Act to be "excess costs of construction on public works arising out of and due to war time conditions and similar to those authorized and directed to be paid under section 1, above." The Act therefore applies.

The final specification to be considered presents the question whether mandamus is the specific and appropriate remedy so as not to be barred by other remedies available to the petitioner. The respondent contends that the remedy afforded by assumpsit against the City and County of

Honolulu is available to the petitioner and that it operates to bar the remedy afforded by mandamus. But section 10262, Revised Laws of Hawaii 1945, in defining the objects of the writ of mandamus specifically provides that the writ shall issue even where a party has other means of relief if the slowness of the ordinary forms is likely to produce such a delay that the public good and the administration of justice will suffer from it and where justice and reason require that some mode should exist of redressing a wrong or an abuse of any nature whatever. The wrong to be redressed here is one for partial nonperformance of contract and of moral obligation on the part of the City. But it is not a wrong by the City itself in so far as its legislative body is concerned in making the necessary appropriations or in so far as its discretionary officer is concerned in approving the claims and authorizing payment. Nor is there any dispute between the petitioner and the City as to those claims and the facts giving rise to them. It is only the City's wrong in the sense that its ministerial officer has failed to abide by the mandate of statute in refusing to draw the warrants in payment of such claims. Thus, the wrong to be redressed is attributable to that officer alone and it essentially constitutes his wilful default of duty. A mere money judgment in assumpsit against the City would not operate to coerce performance of ministerial duty by that officer as a matter of law and, if he persisted in his wilful default of duty, would require further judicial process to redress the wrong so as to otherwise satisfy the judgment. In any event, the remedy afforded by assumpsit would be at best an indirect method by which to redress such wrong. The more effective remedy should be peculiarly one in personam, aimed directly at such officer and his thwarting of payment, to compel him to perform his duty which is purely ministerial and involves no judgment on his part. Of such nature is the remedy afforded by mandamus

and that remedy is the specific and appropriate one in this case. Nor is it barred by the available remedy afforded by assumpsit. This court so held in a comparable case. (*Spellman* v. *Wilson,* 28 Haw. 538.) Moreover, the remedy afforded by mandamus is the only direct remedy available to the petitioner as well as the most prompt and efficient mode of redress. No other suffices to meet the dictates of justice and reason. In other words, anything short of a summary direction by mandamus that the respondent shall forthwith perform his ministerial duty would be a miscarriage of justice.

In answering as it does the material questions on error adversely to the respondent, this court finds that the specifications of error presenting those questions are devoid of merit.

Peremptory writ affirmed.

*A. K. Trask* (also on the briefs) for plaintiff in error.

*J. G. Anthony* (*Robertson, Castle & Anthony* and *F. D. Padgett* on the briefs) for defendant in error.