# JAMES W. GLOVER, LIMITED *v.* LEONARD K. FONG.

## No. 3091.

ARGUED MARCH 20 AND JUNE 9, 1958.      DECIDED JUNE 13, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by the defendant from a final judgment entered in a tort action filed as a sequel to *Glover* v. *Fong*, 39 Haw. 308. We will hereafter refer to *Glover* v. *Fong, supra,* as the mandamus case. In that case, this court affirmed the issuance by the circuit court of a peremptory writ of mandamus directed to the defendant.

The instant case was previously before this court on plaintiff's appeal from an order of the circuit court sustaining defendant's demurrer to the complaint. On that occasion, this court reversed the order of the circuit court. (*Glover* v. *Fong,* 40 Haw. 503) We will hereafter refer to that appeal as the prior appeal.

The background of this case is stated in the opinion of this court in the mandamus case. Here, only such facts as are necessary for the determination of the questions involved on this appeal will be stated.

Plaintiff is a contractor. It had claims against the city and county of Honolulu, totaling $79,651.54, in connection with a contract for the construction of a sewer line. The city and county controller preaudited the claims and approved their payment. Defendant was the auditor of the city and county of Honolulu when the controller approved the payment of the claims. He refused to draw

warrants for their payment despite the controller's approval. Plaintiff, thereupon, brought the mandamus case.

Upon the termination of the mandamus case, plaintiff filed the instant case to recover its damages incident to defendant's failure to draw the warrants. Plaintiff stated his cause of action in two counts. Although the counts are denominated causes of action in the complaint, they are properly separate counts and were treated as such at the trial.

In the first count, plaintiff alleged that it was damaged by the filing of a return to an alternative writ of mandamus by the defendant which contained material allegations of fact which he knew to be false. In the second count, it alleged that it was damaged by defendant's malicious, wilful and arbitrary conduct in refusing to perform the plain duties of his office. Under such allegations, plaintiff sought to recover special damages for loss of use of the money which should have been paid to it promptly upon approval of its claims by the controller and legal fees and expenses incurred in the mandamus case; and it also sought to recover punitive damages for defendant's malicious conduct and harassing actions in depriving it of the use of the money and forcing it to incur legal fees and expenses in the assertion of its right to prompt payment of the money.

The case was tried before a jury. The jury returned a verdict of no damage, either special or punitive, under the first count, and special damage of $14,308.28, but no punitive damage, under the second count. The verdict of special damage under the second count was for precisely the amount of legal fees and expenses incurred by the plaintiff in the mandamus case.

On this appeal, the defendant charges that the trial court erred in refusing to give to the jury instructions Nos. 1 and 20 requested by him and in giving instructions

Nos. 6 and 7 requested by the plaintiff. Defendant's objections to the action of the court with respect to these instructions are noted in its minutes.

Defendant's principal complaint concerns the giving of plaintiff's requested instruction No. 6. That instruction read as follows:

"Where the law requires absolutely a ministerial act to be done by a public officer and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct, irrespective of any mistake as to his duty and honest intentions.

"You are instructed that it has already been adjudicated and therefore is the law that the defendant as auditor had a ministerial duty to draw the warrants which were the subject of the mandamus action and that therefore as to Count 2 you must render a verdict awarding to the plaintiff such actual damages as you may find from the evidence the plaintiff suffered as a result of defendant's disobedience. The evidence in this case is that plaintiff suffered actual damage consisting of the interest on the respective vouchers from the dates upon which payments should have been made to it and attorney's fees and expenses incurred by plaintiff to compel defendant to perform his ministerial duty of issuing the warrants."

The trial court initially refused to give the instruction. However, upon further consideration, it reluctantly gave the instruction because, in its view, the instruction embodied the holdings of this court in the mandamus case and on the prior appeal and it was bound to follow such holdings regardless of its opinion as to their soundness.

The court was correct in its view that it was bound to follow such holdings. In connection with the instant action, the holding in the mandamus case is res judicata

and the holding on the prior appeal established the law of the case.

It was also correct in taking the view that the instruction embodied the holding in the mandamus case. The holding in the mandamus case is that the defendant had a purely ministerial duty to draw the warrants in payment of plaintiff's claim. The instruction contained a statement to that effect.

We do not think that the court was correct in its view that the instruction embodied the holding on the prior appeal. On the prior appeal, the question before this court was whether the complaint stated a cause of action. Both under the first count and the second count, the cause of action was predicated upon defendant's allegedly malicious misconduct. Thus, the holding on the prior appeal related only to a situation which involved malice and did not cover a situation where malice was absent, despite the language in the opinion which appears to countenance a wider coverage. The instruction contained no reference to malice.

We are then confronted with the question as to whether the instruction correctly stated the applicable law, aside from the question as to whether it embodied the holding on the prior appeal.

The instruction purported to state the law with respect to the basis of liability and the law with respect to the measure of special damages.

It correctly stated the law with respect to the basis of liability. A public officer is liable for damages that proximately result from his failure to perform a purely ministerial duty. Malice is not a requisite element of such liability. (*Amy* v. *The Supervisors,* 11 Wall. 136; *Grider* v. *Tally,* 77 Ala. 422, 54 Am. Rep. 65; *Hupe* v. *Sommer,* 88 Kan. 561, 129 Pac. 136; *McGraw* v. *Gresser,* 226 N. Y. 57, 123 N. E. 84; *Stiles* v. *Morse,* 233 Mass. 174, 123 N. E. 615; *Industrial Commission* v. *Strong,* 77 Colo. 590, 239 Pac.

12; *Talmadge* v. *McDonald*, 44 Ga. App. 728, 162 S. E. 856; *Rowley* v. *Ferguson*, [Ohio App.] 48 N. E. [2d] 243)

We cannot say categorically that the instruction stated the law with respect to the measure of special damages correctly. Unquestionably, loss of use of money is a proper item of special damages even where there is no showing of malice. It was so held in *Hupe* v. *Sommer, supra*. The law is not settled with regard to legal fees and expenses. Of the cases cited in the preceding paragraph, the question was considered only in *Stiles* v. *Morse* and *Talmadge* v. *McDonald*. In *Stiles* v. *Morse,* the court allowed recovery of a reasonable counsel fee paid in procuring reinstatement in office. On the other hand, in *Talmadge* v. *McDonald,* the court denied recovery of attorney's fee and costs in the mandamus proceeding.

In *Mid-Pacific Dress Mfg. Co.* v. *Cadinha,* 33 Haw. 456, this court followed the general rule which requires each party to a litigation to pay his own counsel fee in the absence of statutory requirement or an agreement authorizing the allowance of such fee. There is an exception to the general rule which allows the inclusion of counsel fee in the measure of damages where the facts are such as to authorize an award of punitive damages. (12 Am. Jur., *Damages,* § 143; 25 C.J.S., *Damages,* § 50) Defendant's requested instruction No. 20 stated such exception to the general rule in predicating recovery of damage on account of legal fees and expenses upon a showing of malice.

If the law requires a showing of malice for the inclusion of legal fees and expenses in the measure of damages in an action against a public officer for failure to perform his ministerial duty, then the trial court erred in giving plaintiff's requested instruction No. 6, without qualifying the measure of damages stated therein, and in refusing to give defendant's requested instruction No. 20. However, we need not decide the question on this appeal.

Defendant states that the verdict awarding special damages under the second count was based on plaintiff's requested instruction No. 6. That is not an entirely accurate statement.

At different stages during the course of its deliberation, the jury sent six questions to the court. Jury's questions Nos. 4, 5 and 6, and the court's answers thereto, were as follows:

*Question No. 4:* "If defendant is found *'no malice',* on both counts, is he automatically cleared of actual damages also?"

*Answer:* "If you find the defendant guilty of no malice under count 2 you will still assess actual damages under count 2."

*Question No. 5:* "Can we compromise on the actual damages on Count II, finding the defendant not guilty of malice?"

*Answer:* "You should assess such actual damages under count 2 as you find are reasonably chargeable to the defendant's failure to carry out his ministerial duties."

*Question No. 6:* "Can we agree on a figure lower than $23,503.19?"

*Answer:* "Yes."

The mentioned figure of $23,503.19 was the total amount claimed by the plaintiff as special damages under the second count, consisting of $9,194.91 for loss of use of the money and $14,308.28 for legal fees and expenses.

It will be noted that the answers to jury's questions excluded malice as a requisite element of defendant's liability. Under the answers, the jury was justified in including legal fees and expenses in its verdict for special damages even though it should find that the defendant acted without malice. This the jury proceeded to do.

For the preservation of defendant's objection to the court's actions regarding plaintiff's requested instruction No. 6 and defendant's requested instruction No. 20, the defendant should have objected to the mentioned answers to jury's questions.

The minutes of the court show that the following proceeding took place immediately after the court read the instructions to the jury:

"Counsel approached the bench and without the hearing of the jury, Mr. Choy stated for the record that the objections made to the giving of certain instructions and the refusal by the Court to allow certain instructions yesterday during the settlement of instructions be entered as having been made by counsel at this time. The Court stated it is stipulated by counsel that the objections made to the giving or refusing of instructions in chambers yesterday will stand for the purposes of the record as having been made at this time."

That stipulation applied only to plaintiff's requested instructions and defendant's requested instructions which were considered by the court before the jury began its deliberation. It did not apply to the answers to questions asked by the jury during the course of its deliberation. Defendant's counsel could have noted objections to the answers, if he had any. He did so with regard to the answer to jury's question No. 2. Thus, the minutes show the following proceeding:

"The jury sent out to the Court the following question: 'Whether to disregard the Supreme Court decision?' Court and counsel met in chambers to answer the question. The Court sent in the following answer: 'No.' Mr. Choy stated that he would like to note his objection to the Court's answer of 'No' to the jury in answer to question number 2."

Defendant's counsel evidently did not see anything

objectionable in the answers to jury's questions Nos. 4, 5 and 6. He not only did not object to them but, as a matter of fact, stipulated that they be given. By so stipulating, he invited the error, if the answers did not state the law correctly. We see no difference between stipulating that certain answers be given and requesting that they be given.

A party may not, on appeal, question any error of the trial court brought about by his invitation, except as to errors that are jurisdictional. (*Keaunui* v. *Poka,* 4 Haw. 237; *Pataray* v. *Lee Hing,* 37 Haw. 14; *Yazoo & M.V.R. Co.* v. *Wade,* 162 Miss. 699, 139 So. 403; 3 Am. Jur., *Appeal and Error,* §§ 876, 880; 5 C.J.S., *Appeal and Error,* §§ 1501, 1507)

In *Keaunui* v. *Poka,* the plaintiffs sued the defendants in ejectment. The jury returned a verdict awarding to the plaintiffs one-half interest in the land claimed by them, and the trial court entered a judgment in accordance with the verdict. The plaintiffs appealed on the ground that they were entitled to the entire interest in the land. The record of the trial court showed: "The parties to the suit having agreed to take a verdict for one-half of the land, and each pay one-half of the costs, the Court, at 11:45 A. M., addresses the jury and directs them to bring in a verdict accordingly; and without retiring the jury returned a unanimous verdict for the plaintiffs of one-half the land, the defendants to have the other half. The costs to be equally divided." In affirming the judgment, this court stated:

"It appears from the above record that the parties came to an agreement, that is to say, for reasons best known to themselves, they made a compromise, and agreed that the Court should instruct the jury to return a verdict for the plaintiffs for one-half of the land, and for the defendants for the other half. The Court did as requested and the verdict was returned ac-

cordingly, which was followed by a judgment in due course. * * *

"* * *

"An erroneous impression of the law under which the parties may have labored when they consented to such a verdict, is not an error which can be corrected, for it is not an error of the Court and could not have appeared on its record.

"The error, if any there was, was made or suffered by the plaintiffs themselves, and on the principle of the maxim, *'Volenti non fit injuria,'* it is remediless, because voluntarily suffered."

In *Yazoo & M.V.R. Co.* v. *Wade, supra,* both plaintiff and defendant secured instructions regarding the duty of a common carrier to passengers which were contended to be erroneous by the defendant on appeal. In dismissing defendant's appeal, the court stated: "We are not called upon to announce the correct rule of law to be adopted by this state relative to the duty of a common carrier to a passenger boarding a train and being injured before he has had time to find a seat and be seated. But, conceding for the sake of argument that appellant is correct in its view of the law, we have concluded that by securing a contrary announcement he has waived the point, is bound thereby, and is estopped to present it here on appeal."

It makes no difference that an objection to the court's action was noted when the same question was presented previously at the trial. (*Mossman* v. *Sherman,* 34 Haw. 477; *Phillip Levy & Co.* v. *Davis,* 115 Va. 814, 80 S. E. 791) The law is well stated in *Phillip Levy & Co.* v. *Davis* as follows: "Yet, even if the instruction were erroneous, the plaintiffs would be estopped to question it. A party who invites error will not be heard to complain of having misled the court. * * * Nor is this principle affected by the circumstance that the plaintiffs had asked for other

instructions propounding a different doctrine which were refused and the ruling excepted to. They should have stood by their exception."

*Mossman* v. *Sherman* was an action for damages for injuries sustained in an automobile accident. Judgment in the trial court was in favor of the plaintiff. At the trial, the defendant moved for a mistrial. The motion was predicated upon a question propounded by plaintiff's counsel to the jurors on *voir dire* suggesting the probability of defendant's coverage by public liability insurance. The court denied the motion and the defendant excepted to the denial. But, instead of standing by the exception, the defendant requested the court to give, and the court gave, the following instruction: "You are instructed, gentlemen of the jury, that there is no evidence in this case to the effect that the defendant carries public-liability insurance. You will therefore in arriving at your verdict, not allow any speculation on the question of insurance to influence you in your decision. * * *" This court held that by requesting such instruction, the defendant waived his right to take advantage of any error based on the question propounded by plaintiff's counsel to the jurors. It stated: "By requesting this instruction the defendant voluntarily placed himself in the awkward and inconsistent position of asking this court to set aside the verdict of the jury because of an alleged injury done him by the mere propounding of a question to the jurors and at the same time admitting that the question was rightfully propounded."

Consequently, on this appeal, the defendant is precluded, by his counsel's stipulations to the answers to jury's questions Nos. 4, 5 and 6, from questioning the court's actions in giving plaintiff's requested instruction No. 6 and in refusing to give defendant's requested instruction No. 20, on the ground that such actions excluded

malice as a requisite element of defendant's liability for special damages.

The same is true of defendant's objection to the court's action in refusing to give defendant's requested instruction No. 1. The defendant may not question such action because of his counsel's stipulation to the answer to jury's question No. 4. Additionally, the requested instruction had the vice of being too broad in that it predicated defendant's liability for all items of damages on a showing of malice.

We need not review the court's action in giving plaintiff's requested instruction No. 7 for a different reason. The instruction concerned punitive damages. The jury did not award any punitive damage under either the first count or the second count. The instruction did not affect the outcome of the case. Thus, defendant's objection to the court's action is moot and academic.

Earlier, we stated that this court held in the mandamus case that the defendant had a ministerial duty to draw the warrants in payment of plaintiff's claims. Defendant contends that such is not the holding in that case. If the defendant is correct in his contention, then the verdict in the instant action cannot be sustained, for the defendant was liable for special damages only if he had failed to perform his ministerial duty.

We think that, with regard to such contention also, the defendant is precluded by his counsel's action from obtaining the consideration of this court. Defendant's counsel objected to the court's answers to jury's question No. 2 as to whether it might "disregard the Supreme Court decision." That objection preserved defendant's right to have this court consider his contention as to the nature of the holding in the mandamus case. But the efficacy of the objection in that regard was nullified by the stipula-

tion of defendant's counsel to the giving of the answer to jury's question No. 4.

The result is no different even if the contention is considered on its merit.

Defendant's contention that this court did not hold his duty to be ministerial is based on the statement in the opinion in the mandamus case that there may be a situation where the city and county auditor may justifiably refuse to draw a warrant in payment of a claim preaudited and approved by the controller, such as where he can show that the claim was fraudulent, that a mistake exists in the amount of the claim, that the claim is based on an unconstitutional statute, or that the controller exceeded his power in approving the claim.

The holding of a case is determined by an examination of the adjudication itself, not by a consideration of the court's statement in the process of making the adjudication. A consideration of such statement may indicate that the adjudication is erroneous; it does not show that the adjudication is other than what it is. In the mandamus case, this court affirmed the issuance of a peremptory writ of mandamus to the defendant by the circuit court. Such affirmance represented an adjudication compelling the defendant to draw the warrants in payment of plaintiff's claims forthwith.

A judgment is the result of an application of a legal principle to the state of facts presented to the court. In a mandamus proceeding involving a public officer, the applicable principle is that a peremptory writ will issue where such officer fails to perform his ministerial duty. (*Harris* v. *Goodale,* 2 Haw. 130; *Castle* v. *Kapena,* 5 Haw. 27; *Chock Kem* v. *Austin,* 8 Haw. 688; *Hackfeld* v. *King,* 11 Haw. 5; *Ewa Plantation Co.* v. *Tax Assessor,* 18 Haw. 362) This court reiterated the principle in *Glover* v. *Fong,* 39 Haw. 308, at page 326, where it discussed the efficacy

of an assumpsit action as compared to a mandamus proceeding, as follows: "In any event, the remedy afforded by assumpsit would be at best an indirect method by which to redress such wrong. The more effective remedy should be peculiarly one in personam, aimed directly at such officer and his thwarting of payment, to compel him to perform *his duty which is purely ministerial and involves no judgment on his part.* * * * Moreover, the remedy afforded by mandamus is the only direct remedy available to the petitioner as well as the most prompt and efficient mode of redress. * * * In other words, anything short of a summary direction by mandamus that the respondent shall forthwith perform his *ministerial duty* would be a miscarriage of justice." (Emphasis supplied) Thus, in affirming the issuance of a peremptory writ, this court must necessarily have concluded that the defendant's duty to draw the warrants was ministerial.

It appears that the sum and substance of defendant's contention is not that this court did not hold that his duty was ministerial but that it erred in so holding. His contention, then, is a collateral attack on the judgment in the mandamus case. Under the doctrine of res judicata, he may not, in the instant action, collaterally attack the judgment in the mandamus case.

The doctrine of res judicata "is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." (30A Am. Jur., *Judgments,* § 324; 50 C.J.S., *Judgments,* § 592; 2 Freeman on Judgments, 5th ed., § 627; *Makainai* v. *Lalakea,* 29 Haw. 482; *Southern Pacific Railroad Company* v. *United States,* 168 U.S. 1) It is based on considerations of public policy and private right. The consider-

ation of public policy is that it is to the public interest that there be an end to litigation; and the consideration of private right is that a person shall not be twice harassed with respect to a matter previously litigated and finally adjudicated. (*Hart Steel Co.* v. *Railroad Supply Co.*, 244 U. S. 294) The reason for the doctrine is well stated in *Southern Pacific Railroad Company* v. *United States, supra,* at page 48, as follows:

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them."

A final adjudication operates as res judicata even though it is erroneous. (30A Am. Jur., *Judgments,* § 354; 50 C.J.S., *Judgments,* § 618; 2 Freeman on Judgments, 5th ed., § 727) A judgment is final where the time to appeal has expired without appeal being taken. (*Kithcart* v. *Metropolitan Life Insurance Co.,* 119 F. [2d] 497; *United*

*States* v. *Munsingwear, Inc.*, 340 U. S. 36) The adjudication in the mandamus case is final because the United States Court of Appeals of the Ninth Circuit dismissed defendant's appeal on the ground of his failure to file the record on appeal and docket the appeal within the prescribed time. (*Fong* v. *James W. Glover, Limited,* 197 F. [2d] 710)

Defendant argues that, even though he may be bound by the holding in the mandamus case under the doctrine of res judicata, the "companion doctrine of stare decisis" authorizes this court to reexamine the decision and overrule it if it is erroneous. He supports his argument by quoting from 21 C.J.S., *Courts,* § 193, to the effect that the doctrine of stare decisis does not compel a court to follow its prior decision to the extent of perpetuating its error.

In presenting such argument, the defendant confuses the doctrine of res judicata and the doctrine of stare decisis. The doctrine of res judicata is concerned with the adjudication of a cause of action or an issue and the effect of such adjudication in a subsequent action between parties to the record involving the same cause of action or issue. The doctrine of stare decisis relates to the legal principle that may be extracted from an adjudication of a cause of action or an issue and the application of such principle in a subsequent action between strangers to the record involving a similar cause of action or issue. (2 Freeman on Judgments, 5th ed., § 630; 30A Am. Jur., *Judgments,* § 330; 21 C.J.S., *Courts,* § 188) When we say parties to the record, we mean persons who were parties in the action in which the adjudication was made; when we say strangers to the record, we mean persons who were not parties in such action.

There is no element of estoppel in the doctrine of stare decisis because it applies only in actions between strangers

to the record. If there is a contention in an action between strangers to the record that a principle for which a prior decision stands is erroneous, operates unjustly or against public interest, or is otherwise objectionable, and such contention is well taken, the court which rendered the decision may overrule it. (*Estate of Allen*, 35 Haw. 501; *Kamau* v. *County of Hawaii*, 41 Haw. 527) When a decision is overruled, it does not mean that the adjudication of the rights and obligations of the parties to the record is nullified; it only means that the legal principle contained in the decision will not be applied in the determination of a cause of action or issue in an action between strangers to the record.

The holding in the mandamus case as to the nature of defendant's duty was a narrow one. It was not that the defendant, as city and county auditor, had a ministerial duty to draw warrants in payment of any and all claims preaudited and approved by the controller; it was that his duty was ministerial only with respect to plaintiff's claims involved in the case. The holding was based on this court's determination, upon the facts appearing in the record on appeal, that a situation justifying the defendant to ignore the action of the controller did not exist as to such claims.

So, the decision in the mandamus case does not stand for the principle that the city and county auditor, whoever he may be, has a ministerial duty to draw warrants in payment of any and all claims preaudited and approved by the controller. It only stands for the principle that the auditor's duty with respect to such claims is considered ministerial if a court of competent jurisdiction determines, upon a review of the facts presented to it, that a situation justifying the auditor to ignore the action of the controller does not exist.

This court as presently constituted, including the justice who participated in the mandamus case, entertains

a serious doubt as to the soundness of such principle and as to whether it is warranted by our statutes. It appears to place the auditor between the devil and the deep blue sea. Under R.L.H. 1955, § 149-51, an officer of the city and county of Honolulu who pays any claim not authorized by law is liable to the city and county individually and on his official bond for the amount of the claim so paid. In view of the statute, it seems that if the auditor pays a claim which is fraudulent, is erroneous in amount, is based on an unconstitutional statute, or is illegally approved by the controller, he is not absolved from personal liability to the city and county for paying a claim not authorized by law, despite the controller's preaudit and approval of such claim. On the other hand, in view of the decision in the mandamus case, the auditor subjects himself to personal liability for damages to the claimant if he fails to pay a claim preaudited and approved by the controller, even though he in good faith considers that there is a ground which justifies him in withholding the payment, if the court later determines that he was not justified in so doing. However, on this appeal of an independent action between parties to the record, we can do no more than to express our qualm. We may reexamine the decision in the mandamus case if a case should come before us involving an action between strangers to the record in which the nature of the auditor's duty as discretionary or ministerial is a material issue.

In making the statement in the preceding paragraph, we are aware that it is dictum. Appellate courts will not consider any question not necessary or relevant to the final determination of the appeal. (3 Am. Jur., *Appeal and Error,* § 823; 5 C.J.S., *Appeal & Error,* § 1455) This is not an inflexible rule. Exceptions are made on questions of great public importance. (*Board of Medical Examiners* v. *Steward,* 203 Md. 574, 102 A. [2d] 248; *De*

*Maggio* v. *Attorney General,* 300 Mich. 251, 1 N. W. [2d] 530) The Supreme Court of the United States has departed from the general rule in cases involving decisions of the lower courts on questions not material to the determination of the appeal, where it seemed undesirable to leave such decisions as controlling precedents. (*Hurn* v. *Oursler,* 289 U. S. 238, 240; *United States* v. *Gypsum Co.,* 333 U. S. 364, 387) So, our excuse in expressing our doubt as to the soundness of the decision in the mandamus case is that the question there involved is of public interest, as it relates to the effective discharge of a duty of a public officer, and we doubt the desirability of the decision serving as a precedent to guide the actions of the auditor without a thorough reexamination.

Defendant also urges upon us that we review the holding on the prior appeal on the question of election of remedies. The holding was that plaintiff's prosecution of the mandamus case did not bar it from maintaining this action. That holding established the law of the case in further proceedings in this case.

The doctrine of the law of the case is akin to res judicata but is more limited in its application. It relates solely to questions of law and is confined in its operation to subsequent proceedings in the same case. (2 Freeman on Judgments, 5th ed., § 630) The doctrine is that a determination of a question of law made by an appellate court in the course of an action becomes "the law of the case" and may not be disputed by a reopening of the question at a later stage of the litigation. It normally commands adherence but is not subject to the inflexibility of res judicata. Considerations justifying a deviation from adherence to the doctrine are stated in *Mangold* v. *Bacon,* 237 Mo. 496, 141 S.W. 650, as follows: "Whether from grace or right when cogent and convincing reasons appear, such as lack of harmony with other decisions and where

no injustice or hardship would flow from a change, or where by inadvertence principles of law have been incorrectly declared the first time, or mistake of fact has been made, or injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play, and it is our duty to re-examine and correct our own errors on the second appeal in the same case."

We see no reason for reexamining the holding on the prior appeal. The question of election of remedies and other questions raised on that appeal were considered not once but twice because there was a rehearing. In the holding on the prior appeal on election of remedies, lack of harmony with other decisions is not manifest, nor can we say that it is erroneous.

Our decision in this case turns on the actions of defendant's counsel in connection with jury's questions Nos. 4, 5 and 6. Such actions are recorded in the minutes of the circuit court of May 1, 1956, but are not specified in the designation of contents of the record on appeal. The only reason that the minutes are before this court is that they contain another matter specified in the designation. That raises the question as to whether this court may properly consider matters in these minutes not specified in the designation. The question arises because H.R.C.P., Rule 75 (g) provides: "Only the matter designated by the parties when transmitted by the clerk constitutes the record on appeal * * *."

Rule 75 (g) of the Hawaii rules has no counterpart in the Federal rules. The rule is designed to save the time and expense required in printing or typewriting a separate record on appeal. Before its adoption, the rules of this court provided that "no original papers other than bills of exceptions, transcripts of evidence and exhibits, shall be transmitted to this court," and that "copies of

papers shall be printed or typewritten and certified." The new rule lays before us "the file or folder of the circuit court wherein shall be located all the original papers dealing with the action or proceeding in which the appeal is taken," but limits our examination to the papers that are identified in the certificate of the clerk of the circuit court as being within the designation of contents of the record on appeal. It also includes within the record on appeal "copies of such minutes and entries in the permanent records of the court as are designated."

In his designation of contents of the record on appeal, the defendant specified the following: "Minutes of the Court Clerk kept * * * (b) on the oral stipulations of the parties that the objections made in chambers during the settling of the instructions should stand after the instructions were read to the jury." In complying with the designation, the clerk of the circuit court transmitted and certified to this court the entire minutes of May 1, 1956, without identifying the designated matter in any manner. In the absence of identification by the clerk, it was incumbent upon us to read the entire minutes. Upon such reading, we noticed the entries concerning the actions of defendant's counsel which we considered material to the decision of the case.

We are of the opinion that where the clerk of the circuit court transmits and certifies to this court the minutes of the circuit court without identifying the matter specified in the designation of contents of the record on appeal, the entire minutes constitute the record on appeal.

Affirmed.

*Earl S. Robinson* (*Fong, Miho, Choy & Chuck* on the briefs) for appellant.

*Frank D. Padgett* (*Robertson, Castle & Anthony* with him on the brief) for appellee.